Bradley T. Hunsicker (Wyoming Bar No. 7-4579)
Lacey S. Bryan (Wyoming Bar No. 8-7016)
Markus Williams Young & Hunsicker LLC
2120 Carey Avenue, Suite 101
Cheyenne, WY 82001
Telephone: (307) 778-8178
Facsimile: (303) 830-0809
bhunsicker@MarkusWilliams.com
lbryan@MarkusWilliams.com

PROPOSED ATTORNEYS FOR
DEBTOR-IN-POSSESSION

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF WYOMING

| In re:<br><br>BOTW HOLDINGS, LLC<br><br>    Debtor | Case No. 24-20138<br>Chapter 11 (Subchapter V) |
|---|---|
| In re:<br><br>HUSKEMAW OPTICS, LLC<br><br>    Debtor | Case No. 24-20141<br>Chapter 11 (Subchapter V) |
| In re:<br><br>BEST OF THE WEST PRODUCTIONS, LLC<br><br>    Debtor | Case No. 24-20142<br>Chapter 11 (Subchapter V)<br><br>**Jointly Administered Under Case No. 24-20138** |

**MOTION FOR ENTRY OF ORDER: (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES AND OTHER COMPENSATION AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF**

1

BOTW Holdings, LLC ("Holdings"), Huskemaw Optics, LLC ("Huskemaw"), and Best of the West Productions, LLC ("Productions") (collectively the "Debtors"), debtors and debtors-in-possession in the above-captioned jointly administered chapter 11 cases, by and through their undersigned proposed counsel, hereby request entry of an order, pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(b) and Fed. R. Bankr. P. 6003 and 6004: (a) authorizing, but not directing, the Debtors to pay pre-petition employee wages, salaries, and compensation owed to employees as of the chapter 11 filing date; (b) authorizing the Debtors to pay all costs and expenses incident to such payments; (c) authorizing the Debtors to pay any and all withholding, including social security, FICA, federal and state income taxes, and other types of withholding, whether these relate to the period prior to the date of the Debtors' chapter 11 filings or subsequent thereto; (d) authorizing the Debtors to continue employee benefit programs; and (e) authorizing such further and other related relief as necessary to make such payments. In support of this motion, the Debtors state as follows:[1]

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Wyoming has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28

---

[1] Unless otherwise specified, all references herein to "Section," "§," "Bankruptcy Code" and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

2

U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are §§ 105(a), 363(b) and 503(b) and Fed. R. Bankr. P. 6003 and 6004.

## BACKGROUND

3. On April 19, 2024, Holdings separately filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code

4. On April 21, 2024, Huskemaw separately filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code

5. On April 22, 2024,[2] Productions separately filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[3]

6. The Debtors are authorized to operate their business and manage their properties as debtors-in-possession under §§ 1107(a) and 1108. No creditors' committee is appointed in the chapter 11 cases by the Office of the United States Trustee, nor has any trustee or examiner been requested or appointed.

7. The Debtors are Wyoming limited liability companies based in Cody, Wyoming. The Debtors are involved in the outdoor industry, having evolved from their

---

[2] For purposes of this Motion, April 22, 2024 will be considered the "Petition Date."
[3] On April 24, 2024, the Court entered the *Order Directing Joint Administration of Related Chapter 11 Cases for Procedural Purposes Only and Entry of Related Relief* [Doc. 13] pursuant to Fed. R. Bankr. P. 1015(b) and Local Bankruptcy Rule 1015-1, approving the joint administration of the Debtors' chapter 11 cases for procedural purposes only, under the Holdings case, In re BOTW Holdings, LLC, case no. 24-20138.

original focus on outdoor industry video production company to offering long-range shooting systems.

8. Debtor Holdings is the 100% owner and operates as the holding company for Debtor subsidiaries Huskemaw and Productions, as well as other non-Debtor subsidiaries BOTW Arms, LLC, BOTW Ammo, LLC, and Long Range Store, LLC (the "Non-Debtor Subsidiary Affiliates"). Accordingly, the Debtors are affiliates under § 101(2).

9. A description of the Debtors' business, the reasons for filing the chapter 11 cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set more fully described in the *Declaration of Chase Myers in Support of First Day Relief* (the "First Day Declaration"), which the Debtors hereby adopt and incorporate as if fully set forth herein.

**A. The Debtors' Workforce.**

10. As of the Petition Date, the Debtors and Non-Debtor Subsidiary Affiliates collectively employed a workforce of approximately 13 individuals (the "Employees").[4] Eight (8) Employees are compensated on an hourly basis and there are five (5) Employees who receive a salary. None of the Employees are subject to a collective bargaining agreement or any similar labor agreement.

11. The Employees include personnel who are intimately familiar with the Debtors' business, processes, and systems, and possess unique skills and experience with

---

[4] One additional Employee was employed through April 18, 2024.

the core business segments of the Debtors. Many of these Employees have developed relationships with customers and vendors that are essential to the Debtors' business. Without the continued, uninterrupted services of the Employees, the Debtors' business operations will be halted and the administration of the estates materially impaired.

12. Many of the Employees rely on their compensation and benefits to pay their daily living expenses. These workers will be unfairly harmed if the Debtors are not permitted to continue paying compensation and providing benefits during these chapter 11 cases. Thus, the Employees will be exposed to significant financial constraints if the Debtors are not permitted to continue paying the Employees' compensation and providing the Employees with benefits.

**B. Prepetition Payroll Obligations.**

13. Employees are paid every two weeks. Payroll periods run Sunday through Saturday for two weeks, and payroll is paid every other week on Friday. Payroll is submitted to SBW & Associates, PC ("SBW"), the Debtors' third-party payroll processor. For example, a recent payroll period ran from Sunday March 17 through Saturday, March 30, 2024, and employees were paid on Friday, April 5, 2024. The current payroll period for Employees is from Sunday, April 14 through Saturday, April 27, 2024, to be paid on May 3, 2024.

14. Under the existing cash management system utilized by the Debtors, all operating subsidiaries, including the Non-Debtor Subsidiary Affiliates, transfer amounts

necessary to fund payroll to Holdings' Operating Account at First Bank of Wyoming. All Employees of the Debtors and Non-Debtor Subsidiary Affiliates are paid from the Holdings' Operating Account. The Holdings' Operating Account is also used to fund withholding obligations, including, but not limited to, federal, state, and local income taxes, Social Security and Medicare taxes. SBW submits the filings for federal, state, and local taxes associated with payroll.

15. As of the Petition Date, the Debtors will owe Employees approximately $19,500 in accrued wages earned between April 14, 2024 and the Petition Date, to be paid on May 3, 2024 (the "Prepetition Payroll Obligations"). Although the Prepetition Payroll Obligations are for wages earned by these Employees during a prepetition period, the Debtors intend, and through this motion seek authority from the Court, to pay the full Prepetition Payroll Obligations, along with all other wages owed to Employees for the April 14, 2024 through April 27, 2024 payroll period (*i.e.*, wages earned between the Petition Date and April 27, 2024) in the ordinary course of the Debtors' business operations on or about May 3, 2024, to ensure Employees timely receive the full amount of their wages.

16. A list of Employees and the Prepetition Payroll Obligations owed to each Employee is attached hereto.

**C. Withholding Obligations.**

17. In addition to the Prepetition Payroll Obligations, which consist of wages and salaries owed by the Debtors, the Debtors offer their Employees the ability to participate in a number of insurance and benefits programs, including, among other programs, dental, and vision plans, disability benefits, and paid time off (collectively, the "Employee Benefits Programs").

18. Employee Benefits Programs are funded by the Debtors directly as well as routinely deducting certain amounts from Employees' paychecks, as well as other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as an Employee's share of insurance premiums, legally ordered deductions, and miscellaneous deductions (collectively, the "Deductions"), and forward such amounts to various third-party recipients. Each month the Debtors and the Non-Debtor Subsidiary Affiliates collectively fund roughly $2,150 towards employer-contributions to the Employee Benefits Programs.[5]

19. The failure to continue the Employee Benefits Programs and fund the associated Deductions could cause Employees to experience severe hardship. In light of the substantial benefit the Employees have provided and will continue to provide to the Debtors' estates, the Debtors wish to avoid imposing such a hardship. Accordingly, by this motion, the Debtors seek authority, but not direction, to: (a) pay any unpaid amounts due with respect to the Employee Benefits Programs and Deductions; and (b) continue to

---

[5] The Debtors further note that J. Michaletz had accrued 72 hours of PTO at the time of voluntary employment termination, which will be paid out by the Debtors with the May 3, 2024 payroll in the ordinary course of business.

provide Employee Benefits Programs in the ordinary course during the administration of these chapter 11 cases. The Debtors seek authority to continue honoring any obligations under the Employee Benefit Programs, and to pay any postpetition claims with respect thereto, in each case, in the ordinary course of business.

20. Certain federal and state laws require that the Debtors withhold certain amounts from Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, or local taxing authorities. The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based upon a percentage of gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (the "Employer Payroll Taxes" and, together with the Employee Payroll Taxes, the "Payroll Taxes"). The necessary amounts for the Payroll Taxes are reported by the Debtors to SBW, who submits the filings for federal, state and local taxes associated with payroll. The Debtors directly pay the Payroll Taxes out of the Holdings Operating Account to the appropriate taxing entity.

21. As of the Petition Date, the Debtors estimate that they will have unpaid Payroll Taxes outstanding of approximately $3,300 which the Debtors will be required to fund and remit to the appropriate taxing authorities. As of the Petition Date, the Debtors estimate that they will have unpaid Deductions outstanding of less than $200 which would

come due within the first 30 days of these chapter 11 cases (together with Payroll Taxes, the "Withholding Obligations").

22. The Debtors believe such withheld funds, to the extent they remain in the Debtors' possession, constitute funds held in trust and, therefore, are not property of the Debtors' bankruptcy estates. Thus, the Debtors believe they have authority to direct such funds to the appropriate parties in the ordinary course of business. However, to the extent court authorization is necessary, the Debtors request entry of an order authorizing, but not directing, the Debtors to direct such funds to the appropriate parties.

**D. Payroll Processing.**

23. The Debtors use SBW, a third-party payroll vendor, to handle certain Employee related services and functions, including, but not limited to, payroll, processing, withholding, and reporting of federal, state and local taxes associated with payroll. SBW allows the Debtors to realize substantial cost savings on the administration of their employee payroll and benefits by not having to employ additional human resources professionals to administer payroll services for the Employees.

24. As of the Petition Date, the Debtors do not owe any processing fees to SBW (the "Payroll Processing Fees"). The Debtors intend to continue to use SBW during these chapter 11 cases. Accordingly, the Debtors request authority to pay the Payroll Processing Fees and to continue to make all payments on a postpetition basis in the ordinary course and consistent with their prepetition practices.

## RELIEF REQUESTED

25. By this motion, pursuant to §§ 105(a), 363(b) and 507(a), the Debtors seek authority to pay and honor any Prepetition Payroll Obligations and related liabilities, including Employee and employer-paid taxes, continue payment of Employee Benefit Obligations, and pay all costs and expenses incident to payment of the Prepetition Payroll Obligations. The Debtors also seek entry of an order authorizing financial institutions to honor and process payments related to the Prepetition Payroll Obligations.

## BASIS FOR RELIEF REQUESTED

26. Section 507(a)(4) provides that wages, salaries, or commissions earned by an individual within the 180 days preceding a bankruptcy petition are entitled to priority in the amount of up to $15,150.00. 11 U.S.C. § 507(a)(4). Section 507(a)(4) priority claims are entitled to payment in full under a chapter 11 plan before other unsecured creditors. *See* 11 U.S.C. § 1129(a)(9)(B).

27. The Prepetition Payroll Obligations total approximately $19,500 in gross wages, among 14 Employees. The payments made to each of the Employees are below the $15,150.00 maximum for each Employee under § 507(a)(4). All the Employee claims the Debtors seek to pay in the ordinary course of business are entitled to priority under § 507(a)(4). Granting the relief requested herein with respect to the Employee claims entitled to priority affects only the timing, not the amount, of the payments to be made to Employees.

28. The Debtors submit that payment of its Prepetition Payroll Obligations and Employee Benefit Obligations, as requested herein, is appropriate under §§ 105(a), 363(b), 503(b), 507(a), 1107(a), and 1108, as well as the "necessity of payment" doctrine.

29. Section 363(b) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under that section, a court may authorize a debtor to pay certain prepetition claims. *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). To do so, "the debtor must articulate some business justification, other than mere appeasement of major creditors." *Id*. As set forth below, and as further set forth in the First Day Declaration, a sound business justification exists for payment of the Prepetition Payroll Obligations and the relief requested herein.

30. Under § 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In the context of first-day motions, including motions to pay prepetition employee wages, courts have held there are "significant Code-related objectives" that are served by allowing exceptions, such as the "necessity of payment" doctrine, to the Bankruptcy Code's priority distribution scheme. *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017); *In re CoServ, L.L.C.*, 273 B.R. 487, 492 N. 7 (Bankr. N.D. Tex. 2002) (necessity of payment rule "is a rule of payment not of priority" which allows "trustees to pay prepetition debts . . . in order to obtain continued supplies or services essential to the continued operation of

the debtor's business"); *Ionosphere Clubs*, 98 B.R. at 175 (§ 105(a) empowers bankruptcy courts to authorize payment of prepetition debt "when such payment is needed to facilitate the rehabilitation of the debtor").

31. Significant Bankruptcy Code-related objectives exist warranting authorization for the Debtors to pay the Prepetition Payroll Obligations and Employee Benefit Programs. The Employees are vital to the Debtors' business operations and ability to operate as debtors-in-possession during the pendency of the chapter 11 cases. The Debtors' Employees rely on their wages and compensation to pay for housing, food, and energy. Failure to pay the Employees their earned wages and compensation would result in substantial hardship to the Employees. Further, it is axiomatic that the continued loyalty of a debtor's employees is an essential component to any successful reorganization. Under the best circumstances, the filing of a chapter 11 petition is a stressful and uncertain event for a debtor's employees. Such stress and uncertainty may adversely affect employee morale at a time when a debtor is particularly vulnerable to business disruptions. Low morale, and a perception that employees are receiving less than favorable treatment, may result in many employees seeking employment elsewhere. Such a result in this case would negatively affect the value of the Debtors' business and the Debtors' ability to successfully reorganize. Accordingly, honoring the Prepetition Payroll Obligations and Employee Benefit Programs, in the ordinary course of business without interruption will avoid any hardship to the Employees and encourage the Employees to continue their employment

with the Debtors.

32. Further, payment of certain of the Withholding Obligations is required by law. As set forth herein, the Debtors also seek authority to pay Withholding Obligations to the appropriate entities and taxing authorities. These amounts generally represent Employee earnings that taxing authorities, Employees, and judicial authorities have designated for deduction from Employees' paychecks. Indeed, certain Withholding Obligations, including certain Employee contributions to the Employee Compensation and Benefits programs and child support and alimony payments, are not property of the Debtors' estates because the Debtors have withheld such amounts from Employees' paychecks on the Employees' behalf. *See* 11 U.S.C. § 541(b). Federal and state laws require the Debtors withhold certain tax payments from Employees' paychecks and to pay such amounts to the appropriate taxing authority. *See* 26 U.S.C. §§ 6672 and 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Deductions and Payroll Taxes are not property of the Debtors' estates, the Debtors request authority to transmit the Deductions and Payroll Taxes to the proper parties in the ordinary course.

33. Therefore, the relief sought herein is in the best interests of the Debtors, creditors, and the estates for the Debtors to be authorized, but not directed, to pay the Prepetition Payroll Obligations, Withholding Obligations, Payroll Processing Fees, and Employee Benefit Programs and will allow the Debtors to continue business operations with minimal disruption and proceed with the critical task of stabilizing its operations and pursuing a successful chapter 11 reorganization.

34. The Debtors also request all applicable financial institutions be authorized to (a) receive, process, and honor all fund transfer requests made by the Debtors related to payment of the Prepetition Payroll Obligations, Withholding Obligations, Payroll Processing Fees, and Employee Benefit Programs, regardless of whether the fund transfer requests were submitted before, on, or after the Petition Date, and (b) rely on the Debtors' designation of any particular transfer as approved by the proposed order attached to this motion.

35. The Debtors have sufficient funds to pay the Prepetition Payroll Obligations. Some or all the funds to be used to satisfy the Prepetition Payroll Obligations, Payroll Processing Fees, and Employee Benefit Programs may be cash collateral in which one or more secured creditors has an interest. All secured creditors will receive notice of this motion on an expedited basis.

**REQUEST FOR IMMEDIATE RELIEF UNDER FED. R. BANKR. P. 6003(b)**

36. Pursuant to Fed. R. Bankr. P. 6003(b), the Court may grant relief within

14

twenty-one (21) days after the filing of a petition regarding a motion to pay all or part of a prepetition claim only to the extent that such relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would threaten the value of the debtor's estate. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing application of immediate and irreparable harm standard as applied to Bankruptcy Rule 4001); *see also In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008) ("The Advisory Committee commentary [to Bankruptcy Rule 6003] plainly suggests that courts rely on the procedures and advanced case law under Rule 4001(b)(2) and (c)(2) for implementation of new Rule 6003."). One court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3rd Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3rd Cir. 1977)). Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle Cnty.*, 40 F.3d 645, 653-55 (3rd Cir. 1994).

37. Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtors' business for the reasons set forth above. Payment of the Prepetition Payroll Obligations, Withholding Obligations, Payroll Processing Fees, and Employee Benefit Programs is necessary for the Debtors to keep the Employees with the company. Should the Debtors be unable to pay these obligations, the Employees may seek

employment elsewhere, including from competitors of the Debtors. Such a result would have immediate negative impacts on the Debtors' ability to continue operations as a debtor-in-possession during chapter 11 and would cause irreparable harm to the value of the Debtors' business and the Debtors' ability to successfully reorganize. Accordingly, honoring the Prepetition Payroll Obligations, Withholding Obligations, Payroll Processing Fees, and Employee Benefit Programs in an expeditious manner within the first twenty-one (21) days of this chapter 11 case, and in the ordinary course of business without interruption, will avoid any hardship to the Employees, encourage the Employees to continue their employment with the Debtors, and allow the Debtors to continue business operations with minimal disruption. Accordingly, Fed. R. Bankr. P. 6003(b) has been satisfied and the relief requested in this motion should be granted.

### **REQUEST FOR WAIVER OF FED. R. BANKR. P. 6004(h)**

38. Fed. R. Bankr. P. 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, and as further set forth in the First Day Declaration, the relief the Debtors seeks in this Motion is necessary for the Debtors to operate with minimal disruption, and proceed with the critical task of stabilizing its operations and pursuing a successful chapter 11 reorganization and to preserve value for their estates. Without the ability to pay Employees the Prepetition Payroll Obligations, Withholding Obligations, and Employee

16

Benefit Programs, the Debtors may suffer irreparable harm from loss of employees and loss of the Employees' specialized skills and knowledge necessary for continued operations as debtors-in-possession. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Fed. R. Bankr. P. 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## **RESERVATION OF RIGHTS**

39. Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted requested is intended or should be construed as: (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to § 365; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

17

## NOTICE

40. In accordance with L.B.R. 2081-1(b), the Debtors will be filing a *Motion Seeking Expedited Entry of Orders and Notice of Impending Hearing Thereon* (the "Motion for Expedited Hearing"). As stated in the Motion for Expedited Hearing and in accordance with L.B.R. 2081-1(b), a copy of the instant motion and proposed order, along with any order on the Motion for Expedited Hearing and First Day Declaration, will be served by hand delivery, over-night mail, facsimile, or email to: (i) the Office of the United States Trustee; (ii) the Debtors' respective lists of the 20 largest unsecured creditors; (iii) all secured creditors; (iv) the IRS and other relevant government agencies; (v) all parties who have requested notice; and (vi) any party whose interest in property of the estate will be directly affected by the relief requested in this Motion (collectively, the "Notice Parties"). The Debtors submit that, considering the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

41. The Debtors have not previously sought the relief requested herein from this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order: (a) authorizing the Debtors to pay and honor any Prepetition Payroll Obligations and related liabilities, including Employee and employer-paid taxes; (b) pay any and all costs and

expenses incident to payment of the Prepetition Payroll Obligations; (c) authorizing the Debtors to pay any and all withholding, including social security, FICA, federal and state income taxes, and other types of withholding, whether these relate to the period prior to the date of the Debtors' chapter 11 filings or subsequent thereto; and (d) authorizing and directing financial institutions at which Debtors maintain Employee-related accounts to receive, process, and honor and pay all payroll-related checks, drafts, wires, or ACH transfers, provided sufficient funds are available to honor all such payments, without regard to when the applicable payroll check was issued.

| | |
|---|---|
| Dated: April 29, 2024 | MARKUS WILLIAMS YOUNG & HUNSICKER LLC |
| | |
| | By: */s/ Bradley T. Hunsicker* <br> Bradley T. Hunsicker <br> Lacey S. Bryan <br> 2120 Carey Avenue, Suite 101 <br> Cheyenne, WY 82001 <br> Telephone: (307) 778-8178 <br> Facsimile: (303) 830-0809 <br> Email: bhunsicker@markuswilliams.com <br> Email: lbryan@markuswilliams.com |
| | |
| | *Proposed Counsel for the Debtors-In-Possession* |