Bradley T. Hunsicker (Wyoming Bar No. 7-4579)
Lacey S. Bryan (Wyoming Bar No. 8-7016)
Markus Williams Young & Hunsicker LLC
2120 Carey Avenue, Suite 101
Cheyenne, WY 82001
Telephone: (307) 778-8178
Facsimile: (303) 830-0809
bhunsicker@MarkusWilliams.com
lbryan@MarkusWilliams.com

PROPOSED ATTORNEYS FOR
DEBTOR-IN-POSSESSION

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re:<br><br>BOTW HOLDINGS, LLC<br><br>      Debtor | Case No. 24-20138<br>Chapter 11 (Subchapter V) |
| In re:<br><br>HUSKEMAW OPTICS, LLC<br><br>      Debtor | Case No. 24-20141<br>Chapter 11 (Subchapter V) |
| In re:<br><br>BEST OF THE WEST<br>PRODUCTIONS, LLC<br><br>      Debtor | Case No. 24-20142<br>Chapter 11 (Subchapter V)<br><br>**Jointly Administered Under**<br>**Case No. 24-20138** |

## MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS: (A) APPROVING ADEQUATE ASSURANCE OF PAYMENT TO UTILITY PROVIDERS; (B) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILTIY PROVIDERS; (C) PROHIBITING UTILITY

**PROVIDERS FROM DISCONTINUING, ALTERING OR REFUSING
SERVICE; (D) SCHEDULING A FINAL HEARING; AND (E) GRANTING
RELATED RELIEF**

Debtors BOTW Holdings, LLC ("Holdings"), Huskemaw Optics, LLC ("Huskemaw"), and Best of the West Productions, LLC ("Productions") (collectively the "Debtors"), debtors and debtors-in-possession in the above-captioned jointly administered chapter 11 cases, by and through their undersigned proposed counsel, hereby move, under 11 U.S.C. §§ 105(a), 363(b) and 366, for entry of an order, substantially in the form of proposed order filed herewith (the "Interim Utilities Order"): (i) approving adequate assurance of payment to utility providers; (ii) establishing procedures for resolving objections by utility providers; (iii) prohibiting utility providers from discontinuing, altering or refusing service; (iv) scheduling a final hearing ("Final Hearing") for entry of an order granting the relief requested herein on a final basis (the "Final Utilities Order"); and (iv) granting related relief.  In support of this motion, the Debtors state as follows:[1]

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the District of Wyoming has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Unless otherwise specified, all references herein to "Section," "§," "Bankruptcy Code" and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

2.      The statutory predicate for the relief requested herein includes herein are §§ 105(a), 363(b) and 366 and Fed. R. Bankr. P. 6003 and 6004.

## BACKGROUND

3.      On April 19, 2024, Holdings separately filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code

4.      On April 21, 2024, Huskemaw separately filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code

5.      On April 22, 2024, Productions separately filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[2]

6.      The Debtors are authorized to operate their business and manage their properties as debtors-in-possession under §§ 1107(a) and 1108. No creditors' committee is appointed in the chapter 11 cases by the Office of the United States Trustee, nor has any trustee or examiner been requested or appointed.

7.      The Debtors are Wyoming limited liability companies based in Cody, Wyoming. The Debtors are involved in the outdoor industry, having evolved from their original focus on outdoor industry video production company to offering long-range shooting systems.

8.      A description of the Debtor's business, the reasons for filing this chapter 11

---

[2] On April 24, 2024, the Court entered the *Order Directing Joint Administration of Related Chapter 11 Cases for Procedural Purposes Only and Entry of Related Relief* [Doc. 13] pursuant to Fed. R. Bankr. P. 1015(b) and Local Bankruptcy Rule 1015-1, approving the joint administration of the Debtors' chapter 11 cases for procedural purposes only, under the Holdings case, In re BOTW Holdings, LLC, case no. 24-20138.

case and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set more fully described in the *Declaration of Chase Myers in Support of First Day Relief* (the "First Day Declaration"), which the Debtors hereby adopt and incorporate as if fully set forth herein.

## RELIEF REQUESTED

9.     By this motion, the Debtors request: (i) entry of the Interim Utilities Order, substantially in the form filed herewith: (a) deeming Utility Providers adequately assured of future performance; (b) establishing procedures for resolving objections by Utility Providers related to adequate assurance; (c) prohibiting Utility Providers from altering, refusing or discontinuing service to the Debtors on account of prepetition invoices, or otherwise, pending the entry of a Final Order on the relief requested herein; and (d) scheduling a Final Hearing on this motion to consider granting the relief requested herein on a final basis; and, (ii) after the Final Hearing, entry of the Final Utilities Order, granting the relief required herein on a final basis.

## PROPOSED ADEQUATE ASSURANCE PROCEDURES TO RESOLVE OBJECTIONS BY UTILITY PROVIDERS

10.     In the ordinary course of their business operations, the Debtors require services from all manner of utilities including, but not limited to, electricity, gas, water, telecommunications, waste services, and other utility services (collectively, the "Utility Services") from four (4) utility companies (each a "Utility Provider," and, collectively,

the "Utility Providers"), including, but not limited to, municipal entities. A non-exclusive list of Utility Providers as of the Petition Date is attached to this motion as Exhibit 1 (the "Utility Provider List").[3]

11.    The Debtors intend to pay postpetition obligations to the Utility Providers in a timely manner.  Cash held by the Debtors, cash generated in the ordinary course of business, will provide sufficient liquidity to pay the Debtors' Utility Service obligations in accordance with their prepetition practices.  Further, the Debtors believe cash will be available to make timely payments to Utility Providers post-petition.

12.    To provide the Utility Providers with additional adequate assurance of payment pursuant to § 366, the Debtors propose to deposit cash in an amount equal to two weeks' payment for Utility Services (less any Prepetition Deposits that fully exceed outstanding prepetition obligations) (the "Adequate Assurance Deposit"),[4] calculated using the twelve (12)-month historical average for such payments prior to the Petition Date, into a newly created, segregated account for the benefit of the Utility Providers (the "Utility Deposit Account").[5] The Adequate Assurance Deposit will be placed into the Utility Deposit Account within twenty-one (21) days of the Petition Date. The Adequate

---

[3] The inclusion of any entity in, or omission of any entity from, the Utility Provider List is not an admission by the Debtors that such entity is, or is not, a utility within the meaning of § 366, and the Debtors reserve all rights and defenses with respect thereto.

[4] To the extent a Utility Provider has multiple accounts with the Debtors, each two-week Adequate Assurance Deposit will be calculated and funded into the Utility Deposit Account on a per-account, not per-provider, basis.

[5] The Debtors believes it is current on all prepetition payments to Utility Providers.  Based on a monthly average for the twelve (12) months immediately prior to the Petition Date, the Debtors estimate that their cost of Utility Services for the next thirty (30) days will be approximately $3,600 per month during the chapter 11 cases.

Assurance Deposit will be held by the Debtors in the Utility Deposit Account for the benefit of the Utility Providers on the Utility Provider List during the pendency of these chapter 11 cases. The Debtors seek the entry of an order determining that the Adequate Assurance Deposit provides Utility Providers with adequate assurance of payment under § 366(b) and (c)(1)(A) and deeming all Utility Providers entitled to such assurance of payment under § 366 to have received adequate assurance of payment.

13.    The Debtors may, if necessary, adjust the Adequate Assurance Deposit if the Debtors terminate any of the Utility Services provided by a Utility Provider, make other arrangements with certain Utility Providers for adequate assurance of payment, determine that an entity listed on the Utility Provider List is not a utility company as defined by § 366, or supplement the Utility Provider List to include additional Utility Providers. Based on the foregoing, the Debtors estimate that the total amount of the Adequate Assurance Deposit will be approximately $1,700.00. No liens will encumber the Adequate Assurance Deposit or the Utility Deposit Account.

14.    The Debtors further request that the Adequate Assurance Deposit be automatically available to them, without further Court order, upon the effective date of a chapter 11 plan for the Debtors. Additionally, if the Debtors terminate any of the Utility Services provided by a Utility Provider, the Debtors request that they immediately be permitted to reduce the Adequate Assurance Deposit to reflect such termination of Utility Services.

6

15.    The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future utility services in accordance with their prepetition practices (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Providers in full satisfaction § 366 of the Bankruptcy Code.

16.    After entry of the Interim Utilities Order proposed herewith, any Utility Provider failing to request additional adequate assurance by filing an objection to this motion shall be deemed to have been provided with adequate assurance of payment as required by § 366 and shall be prohibited from altering, refusing, or discontinuing Utility Services, including as a result of unpaid charges for prepetition Utility Services. In addition, such Utility Provider will further be deemed to have waived any right to seek additional adequate assurance during the chapter 11 case, except as provided in § 366(c)(3). If, however, a Utility Provider believes adequate assurance beyond that proposed in this motion is necessary, the Debtors submit that the Utility Provider must make an additional assurance request pursuant to the procedures described below (the "Adequate Assurance Procedures").

17.    Considering the adverse consequences to the Debtors' business operations from any interruption in services by the Utility Providers, but recognizing the right of the Utility Providers to evaluate the proposed adequate assurance on a case-by-case basis, the Debtors propose the following Adequate Assurance Procedures to resolve additional

assurance requests in an orderly and fair manner:

a)      Within five (5) business days after the date of entry of the Interim Utilities Order, the Debtors will mail a copy of the Interim Utilities Order to the Utility Providers, together with a notice of the Final Hearing on this motion.

b)      Subject to entry of the proposed Interim Utilities Order, the Debtors will deposit $1,700.00, in the Utility Deposit Account within twenty-one (21) days of the Petition Date.

c)      If an amount relating to Utility Services provided postpetition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request a disbursement from the Utility Deposit Account by giving notice to: (i) proposed counsel to the Debtors, Markus Williams Young & Hunsicker, LLC, 2120 Carey Avenue, Suite 101, Cheyenne, Wyoming 82001, Attn: Bradley T. Hunsicker (bhunsicker@markuswilliams.com) and Lacey S. Bryan (lbryan@markuswilliams.com); (ii) The Office of the United State Trustee, Attn: Daniel J. Morse, Asst. U.S. Trustee, 308 West 21st Street, Suite 203, Cheyenne, Wyoming 82001; and (iii) counsel to any statutory committee appointed in these cases (if any) (the "Utility Notice Parties"). The Debtors shall honor such request within twenty-one (21) business days after the date the Debtors receive the request, subject to the ability of the Debtors and any such requesting Utility Provider to resolve any dispute regarding such request without further order of the Court. To

the extent a Utility Provider receives a disbursement from the Utility Deposit Account, the Debtors shall replenish the Utility Deposit Account in the amount so disbursed.

d)    The Adequate Assurance Deposit deposited into the Adequate Assurance Account on behalf of any Utility Provider (including any additional amount deposited upon request of any applicable Utility Provider) shall be returned to the Debtors, less any amounts owed on account of unpaid, postpetition Utility Services, by no later than five (5) business days following the earlier of the date upon which (i) a chapter 11 plan becomes effective after being confirmed in the chapter 11 cases or (ii) the Debtors providing notice to a Utility Provider that services provided to the Debtors by such Utility Provider no longer will be needed.  Any amounts returned to the Debtors pursuant to this provision shall be subject to the terms and conditions of any then applicable cash collateral order.

e)    If a Utility Provider is not satisfied with the proposed adequate assurance herein and seeks additional adequate assurance of payment, it must serve an additional assurance request upon counsel for the Debtors, whose address appears below. Each additional assurance request must: (i) be made in writing; (ii) set forth the amount and form of additional assurance of payment requested; (iii) set forth the type of Utility Services, any account numbers, and the location for which Utility Services are provided; (iv) include a summary of the Debtors' payment history to

9

such Utility Provider, including whether the Utility Provider holds any deposits or other security, and, if so, in what amount; and (v) set forth why the Utility Provider believes that the proposed adequate assurance herein is not sufficient adequate assurance of payment.  Said request must be made within fourteen (14) days of the entry of the Interim Utilities Order.

f)      Upon the Debtors' receipt of an additional assurance request, the Debtors will have twenty-one (21) days from the receipt of such additional assurance request (the "Resolution Period") to negotiate with the requesting Utility Provider and resolve its additional assurance request.

g)      If a Utility Provider does not file and serve an additional assurance request, the Utility Provider shall be: (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with § 366; and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges or requiring additional assurance of payment other than the proposed adequate assurance.

h)      The Debtors may resolve any additional assurance request, objection or Determination Motion (as defined below) by mutual agreement with the Utility Provider and may provide the Utility Provider with an alternative form of adequate assurance of payment, without further order of this Court, if the Debtors believe that such additional assurance is reasonable; provided, however, that the Debtors shall

maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available upon demand to any official committee appointed in the chapter 11 cases and to the U.S. Trustee.

i)      Should the Debtors be unable to reach a mutual resolution with respect to an additional assurance request within the Resolution Period, the Debtors shall file a motion with the Court seeking a hearing to determine the adequacy of assurance of payment with respect to a particular Utility Provider (the "Determination Motion") and, if the Determination Motion is not withdrawn, the Court will determine the adequacy of the proposed adequate assurance with respect to that Utility Provider.

j)      The Debtors propose that any Utility Provider that objects to this Motion, including the Adequate Assurance Procedures, must file a written objection (an "Objection") and serve such Objection on the Debtors no later than seven (7) days prior to the date of the Final Hearing.

k)      Until the conclusion of the Final Hearing and entry of an appropriate order by the Court any Utility Provider that files an objection is prohibited and enjoined from altering, refusing, or disconnecting its Utility Services to the Debtors.

### BASIS FOR RELIEF REQUESTED

18.     In their business operations, the Debtors receive Utility Services from the Utility Providers, which have been and will be crucial to the continued operations of the Debtors. These Utility Services are necessary to operate the Debtors' businesses.

11

Continuing the Utility Services without interruption is essential to the Debtors' ongoing business and the success of the Debtors' chapter 11 cases. Any interruption of utility services – even for a brief period of time – would seriously disrupt the Debtors' ability to operate their business. Such a result could jeopardize the Debtors' restructuring efforts and, ultimately, creditor recoveries. The Debtors believe they are current on all prepetition payments to Utility Providers. The Debtors assert that the relief requested herein is necessary to ensure uninterrupted business operations and avoid irreparable harm to the Debtors' business and the estate.

19.     The Debtors seek to preserve the protections that Utility Providers have under the Bankruptcy Code, while affording the Debtors an opportunity to provide and negotiate any additional adequate protection without facing the threat of imminent termination of Utility Services.

20.     While the term "utility" is not defined in the Bankruptcy Code, courts have concluded that § 366 is not limited to public utilities, and that "utility" is meant to be interpreted broadly so as to include entities that occupy "some special position with respect to the debtor, such as an electric company, gas supplier or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility." H.R.Rep. 595, 95th Cong., 1st Sess. 350 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 60 (1978). In accordance with the above, the Debtors have determined that the Utility Providers are utilities within the meaning of Bankruptcy Code Section 366, and therefore, are identified

above.

21.     Section 366(a) provides that "[e]xcept as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due."

22.     Further, § 366(b) provides that "[s]uch utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date."  11 U.S.C. § 366(b).

23.     The policy underlying § 366 is to protect debtors from utility service cutoffs upon the filing of a bankruptcy case, while at the same time providing utility companies with adequate assurance that the debtor will pay for post-petition services. *See* H.R. Rep. No. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306.

24.     Based on a monthly average for the twelve (12) months immediately prior to the Petition Date, the Debtors estimate that their cost of Utility Services will be approximately $3,600 per month during the chapter 11 cases. The Debtors estimate that the total amount of the Adequate Assurance Deposit will be $1,700. The Adequate Assurance Deposit would serve as cash security deposits to provide adequate assurance of payment for Utility Services provided to the Debtors after the Petition Date.

13

25.     Similar procedures have been approved by other bankruptcy courts.  *See,
e.g.*, *In re Bighorn Restaurants, LLC*, Case No. 23-19119 (MER) (Bankr. D. Colo. May 9,
2023) (approving adequate assurance deposit equal to two (2) weeks of utility service); *In
re Meridian Restaurants Unlimited, L.C., et al.*, No. 23-20731 (KRA) (Bankr. D. Utah Apr.
6, 2023) (same); *In re FirstEnergy Solutions Corp.*, No. 18-50757 (AMK) (Bankr. N.D.
Ohio Apr. 26, 2018) (same); *In re AcuSport Corp.*, No. 18-52736 (JEH) (Bankr. S.D. Ohio
May 21, 2018) (same);  *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr.
D. Del. June 6, 2014) (same); *In re GSE Environmental, Inc.*, No. 14-11126 (MFW)
(Bankr. D. Del. May 30, 2014) (same); *In re Dolan Co.*, No. 14-10614 (BLS) (Bankr. D.
Del. Apr. 15, 2014) (same); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D.
Del. Sep. 25, 2013) (same); *In re Prommis Holdings*, No. 13-10551 (BLS) (Bankr. D. Del.
Apr. 25, 2013) (same).

26.     The Debtors intend to pay postpetition obligations to the Utility Providers in
a timely manner.  Here, the Utility Providers are adequately assured against any risk of
nonpayment for future services with the Adequate Assurance Deposit.  Further, the
Debtors' ongoing ability to meet obligations as they come due provides assurance of the
Debtors' payment of any currently unknown future obligations.  In the event the Debtors
fail to timely pay for post-petition Utility Services within the normal period allowed for
customers of that Utility Provider, the Utility Provider would be permitted to request a
disbursement from the Utility Deposit Account. Following any utilization of any portion of

the Adequate Assurance Deposit by the Utility Provider, the Debtors would replenish the Adequate Assurance Deposit with that Utility Provider to the amount of the initial deposit with that Utility Provider. The Debtors submit that remaining current on post-petition obligations to Utility Providers in combination with the Adequate Assurance Deposit constitute sufficient adequate "assurance of payment" under § 366(c).

27.     In accordance with § 366(a), the Debtors also request that all Utility Providers, including subsequently added Utility Providers, be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors absent further order of the Court.

28.     While the Debtors have used their best efforts to list all Utility Providers on Exhibit 1 hereto, it is possible that certain Utility Providers may have been inadvertently omitted from that list. To the extent the Debtors subsequently identify additional providers of Utility Services or determine an entity was improperly included as a Utility Provider, the Debtors seeks authority, in their sole and reasonable discretion and without further order of Court, to add or delete any Utility Provider. The Debtors propose to have the terms of the proposed order submitted herewith apply to any such subsequently identified Utility Provider. Moreover, the Debtors will serve on subsequently added Utility Providers a copy of this Motion and the Order entered with respect to the Motion on such Utility Provider.

29.     The proposed Adequate Assurance Procedures are reasonable because they will ensure that the Debtors' Utility Services continue while providing a streamlined process for Utility Companies to challenge the adequacy of the Proposed Adequate

15

Assurance or seek an alternative form of adequate assurance. For the foregoing reasons,
the Proposed Adequate Assurance and the Adequate Assurance Procedures are necessary,
appropriate, and in the best interests of the Debtors, their estates, and all other parties in
interest in these cases. Accordingly, the Court should authorize the Debtors to the relief
requested herein.

## REQUEST FOR IMMEDIATE RELIEF UNDER FED. R. BANKR. P. 6003(b)

30.    Fed. R. Bankr. P. 6003(b) authorizes this Court to grant the relief requested
herein because such relief is necessary to avoid immediate and irreparable harm to the
Debtors and their estate. *See* Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm
exists where the absence of relief would threaten the value of the debtor's estate. *See In re
Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing
application of immediate and irreparable harm standard as applied to Bankruptcy Rule
4001); *see also In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008)
("The Advisory Committee commentary [to Bankruptcy Rule 6003] plainly suggests that
courts rely on the procedures and advanced case law under Rule 4001(b)(2) and (c)(2) for
implementation of new Rule 6003.").  One court has instructed that irreparable harm is a
continuing harm which cannot be adequately redressed by final relief on the merits and for
which money damages cannot provide adequate compensation.  *See Norfolk S. Ry. Co. v.
City of Pittsburgh*, 235 F. App'x 907, 910 (3rd Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d
179, 181 (3rd Cir. 1977)). Furthermore, the harm must be shown to be actual and imminent,

16

not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle Cnty.*, 40 F.3d 645, 653-55 (3rd Cir. 1994).

31.     The Debtors submit that entry of the Interim Utilities Order is appropriate and necessary to avoid immediate and irreparable harm to the estate pending the Final Hearing.  The Debtors require the above-described Utility Services to operate. Any disruption in the Utility Services would cause immediate and irreparable harm to the Debtors' operations and the ability of the Debtors to move forward with their reorganization efforts. Thus, approval of this motion on an interim basis is necessary to avoid immediate and irreparable harm to the Debtors' estates pending the Final Hearing under Fed. R. Bankr. P. 4003(b).

### **REQUEST FOR WAIVER OF FED. R. BANKR. P. 6004(h)**

32.     Fed. R. Bankr. P. 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h). As described above, and as further set forth in the First Day Declaration, the relief the Debtors seeks in this Motion is necessary for the Debtors to operate without interruption, allow the Debtors to business operations with minimal disruption, and proceed with the critical task of stabilizing its operations and pursuing a successful chapter 11 reorganization and to preserve value for their estates. Accordingly, the Debtors respectfully request the Court waive the fourteen-day stay imposed by Fed. R. Bankr. P. 6004(h), as the exigent nature

of the relief sought herein justifies immediate relief.

## **RESERVATION OF RIGHTS**

33.     Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the proposed order is intended or should be construed as: a) an admission as to the validity of any particular claim against a Debtor entity, including any claim by a Utility Provider; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to § 365; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim, including, but not limited to, any claim by a Utility Provider.

## **NOTICE**

34.     In accordance with L.B.R. 2081-1(b), the Debtors will be filing a *Motion Seeking Expedited Entry of Orders and Notice of Impending Hearing Thereon* (the "Motion

for Expedited Hearing"). As stated in the Motion for Expedited Hearing and in accordance with L.B.R. 2081-1(b), a copy of the instant motion and proposed interim and final orders, along with any order on the Motion for Expedited Hearing and First Day Declaration, will be served by hand delivery, over-night mail, facsimile, or email to: (i) the Office of the United States Trustee; (ii) the Debtors' respective lists of the 20 largest unsecured creditors; (iii) all secured creditors; (iv) the IRS and other relevant government agencies; (v) all parties who have requested notice; and (vi) any party whose interest in property of the estate will be directly affected by the relief requested in this Motion (collectively, the "Notice Parties"). The Debtors submit that, considering the nature of the relief requested, no other or further notice need be given.

35.     Additionally, upon entry of the Interim Utilities Order, the Debtors will promptly serve a copy of the Interim Utilities Order, together with a proposed Final Utilities Order and notice of the Final Hearing on this motion in conformity with L.B.R. 9013-1, on the Notice Parties. The Debtors request the Court set a deadline to object to entry of the Final Utilities Order, which deadline will be included in the notice.

## NO PRIOR REQUEST

36.     The Debtors have not previously sought the relief requested herein from this or any other court.

## CONCLUSION

19

37.     The Debtors assert the relief requested herein strikes a fair balance between the rights of Utility Providers and the rights of the Debtors under the Bankruptcy Code and the need, for the benefit of the Debtors and their estates, for the Debtors to continue to receive the Utility Services upon which their business and the operations depend. The Debtors do not believe Utility Providers will be prejudiced by the uninterrupted continuation of the Utility Services.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request the Court: (i) enter the Interim Utilities Order, substantially in the form filed herewith, deeming Utility Providers adequately assured of future performance, establishing procedures for resolving objections by Utility Providers related to adequate assurance, prohibiting Utility Providers from altering, refusing or discontinuing service to the Debtors on account of prepetition invoices, or otherwise, pending the entry of a Final Utilities Order; (ii) scheduling a Final Hearing on this motion to consider granting the relief requested herein on a final basis; (iii) after the Final Hearing, entry of the Final Utilities Order, granting the relief required herein on a final basis; and (iv) granting such other and further relief as the Court finds necessary or appropriate under the circumstances.

Dated: April 29, 2024                MARKUS WILLIAMS YOUNG &
                                     HUNSICKER LLC

                                     By: */s/ Bradley T. Hunsicker*
                                     Bradley T. Hunsicker
                                     Lacey S. Bryan
                                     2120 Carey Avenue, Suite 101
                                     Cheyenne, WY 82001

Telephone: (307) 778-8178
Facsimile: (303) 830-0809
Email: bhunsicker@markuswilliams.com
Email: lbryan@markuswilliams.com

*Proposed Counsel for the Debtors-In-Possession*