Bradley T. Hunsicker (Wyoming Bar No. 7-4579)
Lacey Bryan (Wyoming Bar No. 8-7016)
Markus Williams Young & Hunsicker LLC
2120 Carey Avenue, Suite 101
Cheyenne, WY 82001
Telephone: (307) 778-8178
Facsimile: (303) 830-0809
bhunsicker@MarkusWilliams.com
lbryan@MarkusWilliams.com

PROPOSED ATTORNEYS FOR DEBTOR-IN-POSSESSION

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re:<br><br>BOTW HOLDINGS, LLC<br><br>Debtor | Case No. 24-20138<br>Chapter 11 (Subchapter V) |
| In re:<br><br>HUSKEMAW OPTICS, LLC<br><br>Debtor | Case No. 24-20141<br>Chapter 11 (Subchapter V) |
| In re:<br><br>BEST OF THE WEST PRODUCTIONS, LLC<br><br>Debtor | Case No. 24-20142<br>Chapter 11 (Subchapter V)<br><br>**Jointly Administered Under Case No. 24-20138** |

## DECLARATION OF CHASE MYERS
## IN SUPPORT OF EMPLOYEE WAGE MOTION AND UTILITIES MOTION

{Z0363576/1 }                                                                 1

I, Chase Myers, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury:

1. I am the Manager of Stryk Group Holdings, LLC, which is the majority member of BOTW Holdings, LLC ("Holdings"), and also the Chief Operating Officer of Holdings. In this capacity, I am familiar with the day-to-day operations, businesses, financial affairs, and books and records of Holdings, as well as Holdings' subsidiaries, including Huskemaw Optics, LLC ("Huskemaw"), and Best of the West Productions, LLC ("Productions," and together with Holdings and Huskemaw, the "Debtors").

2. I submit this declaration (the "Declaration") in connection with the Debtors' voluntary petitions (the "Petitions") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") filed in the United States Bankruptcy Court for the District of Wyoming (the "Bankruptcy Court") on the date thereof (the "Petition Date"). I further submit this Declaration to provide an overview of the Debtors and their chapter 11 cases and to support the Debtors' applications and motions for "first day" relief.

3. The Debtors each filed separate, voluntary petitions for relief under chapter 11, subchapter V, of the Bankruptcy Code in the Bankruptcy Court as follows:

| Debtor | Petition Date |
|---|---|
| Holdings | April 19, 2024 |
| Huskemaw | April 21, 2024 |

{Z0363576/1 }   2

| | |
|---|---|
| Productions | April 22, 2024 |

4. The Debtors are authorized to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1184.

5. I am familiar with the business and financial condition of the Debtors and, except as otherwise indicated herein, the facts set forth in this Declaration are based on my personal knowledge, my review of relevant documents, information provided to me by the Debtors' management, employees or professionals, or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and the industry in which they operate. Unless otherwise indicated, all financial information contained herein is presented on an estimated and unaudited basis. I am authorized to submit this Declaration on behalf of the Debtors. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

**I.  SUMMARY OF THE DEBTORS AND BUSINESS OPERATIONS**

6. The Debtors are Wyoming limited liabilities companies with shared principal offices located at 115 West Yellowstone Avenue, Cody, Wyoming 82414.

7. The Debtors, as well as certain other non-debtor subsidiaries, are owned by Holdings and are involved in the outdoor industry, having evolved from their original focus on outdoor industry video production company in 1999 to offering long-range shooting systems.

8. Holdings is a holding company and the sole member and 100% owner of Optics and Productions, as well as three other non-debtor subsidiaries. The majority owner and member of Holdings is Stryk Group Holdings, LLC. Stryk Group Holdings, LLC is managed by Jeffrey Edwards and Chase Myers. Jeffrey Edwards and Chase Myers also manage Holdings, Optics, and Productions.

9. Copies of the corporate resolutions authorizing the filing of these chapter 11 cases by each of the Debtors are attached to their respective petitions and incorporated by reference herein.

## II. EVIDENTIARY SUPPORT OF EMPLOYEE WAGE AND UTILITIES MOTIONS

10. To minimize the adverse effects of filing for bankruptcy protection on its business, the Debtors have requested various types of "first-day" relief through the filing of a *Motion for Entry of Order: (I) Authorizing, but Not Directing, the Debtors to (A) Pay Prepetition Employee Wages, Salaries and Other Compensation and (B) Continue Employee benefits Programs, and (II) Granting Related Relief* (the "Employee Wage Motion") and a *Motion for Entry of Interim and Final Orders (A) Approving Adequate Assurance of Payment to Utility Providers, (B) Establishing Procedures for Resolving Objections by Utility Providers, (C) Prohibiting Utility Providers from Discontinuing, Altering or Refusing Service, and (D) Granting Related Relief* (the "Utilities Motion"). These Motions seek relief intended to allow the Debtors to continue to operate their businesses with minimal interruption and to perform and meet those obligations necessary

to fulfill their duties as debtors-in-possession. I am familiar with the contents of each Motion (including the exhibits thereto), and believe the relief sought in each Motion: (a) is necessary to enable the Debtors to operate in chapter 11 with minimal disruption or loss of productivity or value, (b) constitutes a critical element in achieving a successful reorganization of the Debtors, and (c) best serves the Debtors' estates and creditors' interests.

### A. Employee Wage Motion.

11. I have reviewed the Employee Wage Motion and the factual statements contained therein are true and correct.

12. As of the Petition Date, the Debtors collectively employ a workforce of approximately 13 individuals (the "Employees"). Six (6) Employees are compensated on an hourly basis and there are seven (7) Employees who receive a salary. None of the Employees are subject to a collective bargaining agreement or any similar labor agreement. One additional salaried Employee was employed through April 18, 2024.

13. Debtor Holdings pays Employees every two weeks. Payroll periods run Sunday through Saturday for two weeks, and payroll is paid every other week on Friday. On the Petition Date, the Debtors were in the payroll cycle running Sunday, April 14 through Saturday, April 27, 2024, to be paid on May 3, 2024. Accordingly, as of the Petition Date, the Debtors will owe Employees approximately 65% of the gross wages earned between April 14, 2024 and the Petition Date, to be paid on May 3, 2024 (the

"Prepetition Payroll Obligations"). None of the amounts to be paid to any single Employee for this period will exceed the $15,150.00 priority cap in 11 U.S.C. § 507(a)(4). The Debtors also seek entry of an order authorizing financial institutions to honor and process checks and payments those related to the Prepetition Payroll Obligations.

14. The Debtors also offer Employees the ability to participate in a number of insurance and benefits programs, including, among other programs, dental, and vision plans, disability benefits, and paid time off (collectively, the "Employee Benefits Programs").

15. Additionally, the Debtors withhold certain amounts from Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, or local taxing authorities as required. The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based upon a percentage of gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (the "Employer Payroll Taxes" and, together with the Employee Payroll Taxes, the "Payroll Taxes"). The necessary amounts for the Payroll Taxes are reported by the Debtors to their payroll processor, who submits the filings and payments for federal, state and local taxes associated with payroll, but the Debtors ultimately directly pay all Payroll Taxes to the appropriate taxing authorities out of the Holdings Operating Account.

16. As of the Petition Date, the Debtors estimate that they will have unpaid Payroll Taxes outstanding of approximately $3,300 which the Debtors will be required to fund and remit to the appropriate taxing authorities. As of the Petition Date, the Debtors estimate that they will or may have unpaid deductions, including deductions for including garnishments, child support, and similar deductions, as well as other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as an Employee's share of insurance premiums, legally ordered deductions, and miscellaneous deductions, outstanding of less than $200 which would come due within the first 30 days of these chapter 11 cases (together with Payroll Taxes, the "Withholding Obligations"). Insofar as the Debtors believe such funds are held in trust for the taxing authorities, and are not property of the Debtors' estate, the Debtors request authority to transmit the Deductions and Payroll Taxes to the proper parties in the ordinary course. Additionally, each pay period the Debtors and the Non-Debtor Subsidiary Affiliates collectively fund roughly $2,150 towards employer-contributions to the Employee Benefits Programs.

17. I believe a sound business justification exists for the relief sought in the Employee Wage Motion. The Employees include personnel who are intimately familiar with the Debtors' business, processes, and systems, and possess unique skills and experience with the core business segments of the Debtors. Many of these Employees have developed relationships with vendors that are essential to the Debtors' business. Without the continued, uninterrupted services of the Employees, I recognize that the Debtors'

business operations will be halted and the administration of the estates materially impaired.

19. I believe the Employees are vital to the Debtors' business operations and ability to operate as a debtors-in-possession during the pendency of these chapter 11 cases. The Debtors' Employees rely on their wages and compensation to pay for housing, food, and energy. Failure to pay the Employees their earned wages and compensation would result in substantial hardship to the Employees. Additionally, I believe the failure to continue the Employee Benefits Programs could cause Employees to experience severe hardship. Under the best circumstances, the filing of a chapter 11 petition is a stressful and uncertain event for a debtor's employees. Such stress and uncertainty may adversely affect employee morale at a time when a debtor is particularly vulnerable to business disruptions. Low morale, and a perception that employees are receiving less than favorable treatment, may result in many Employees seeking employment elsewhere, including from competitors of the Debtors. Accordingly, honoring the Prepetition Payroll Obligations and continuing the Employee Benefits Programs in the ordinary course of business without interruption will avoid any hardship to the Employees and encourage the Employees to continue their employment with the Debtors.

19. I believe the Debtors' ability to satisfy the Prepetition Payroll Obligations at the outset of the chapter 11 case is also necessary and essential to the Debtors' continued operations. Loss of the Employees would have immediate negative impacts on the Debtors' ability to continue operations as a debtor-in-possession during chapter 11, and

payment of the Prepetition Payroll Obligations would allow the Debtors to operate without interruption, continue to operate the business with minimal disruption, and proceed with the critical task of stabilizing operations and pursuing a successful chapter 11 reorganization and to preserve value for the estates. Accordingly, the relief requested in the Employee Wage Motion is appropriate under the circumstances and necessary to avoid immediate and irreparable harm to the Debtors' business and prospects of reorganization under chapter 11.

### B. Utilities Motion.

20. On April 29, 2024, the Debtors filed a *Motion for Entry of Interim and Final Orders (A) Approving Adequate Assurance of Payment to Utility Providers, (B) Establishing Procedures for Resolving Objections by Utility Providers, (C) Prohibiting Utility Providers from Discontinuing, Altering or Refusing Service, and (D) Granting Related Relief* (the "Utilities Motion"). I have reviewed the Utilities Motion and the factual statements contained therein are true and correct.

21. In connection with its operations, Holdings and Optics receive utility services from various utility providers (the "Utility Providers"), including telecommunication services, gas, electricity, and waste disposal (the "Utility Services"). The Debtors do not expect these services to exceed $3,600 per month.

22. The relief requested in the Utilities Motion represents another critical piece to permitting the continued operation of the Debtors' business during the pendency of the

chapter 11 cases without interruption. The Debtors' business simply cannot function without the Utility Services provided to Holdings, and any disruption in the Utility Services would cause immediate and irreparable harm, forcing the Debtors to relocate their centralized corporate offices. Accordingly, Holdings seeks to preserve the protections that Utility Providers have under the Bankruptcy Code, while affording the company an opportunity to provide and negotiate any additional adequate protection without facing the threat of imminent termination of Utility Services. Holdings also seeks in the Utilities Motion to prohibit Utility Providers from altering, refusing, or discontinuing Utility Services to company absent further order of the Court.

23. Under the Utilities Motion, Holdings proposes to pay in advance to each Utility Provider a deposit equal to an average of one-month charge for services provided by that Utility Provider (the "Utility Deposits"). The Utility Deposits would serve as cash security deposits to provide adequate assurance of payment for Utility Services provided to company after the Petition Date. I believe that the Utility Deposits constitute sufficient adequate "assurance of payment" as required under Section 366(c) of the Bankruptcy Code. I also believe the procedures enumerated in the Utilities Motion for making additional adequate assurance requests and for resolving such requests are fair, orderly, and reasonable.

Dated: April 29, 2024          By: */s/ Chase Myers*