Bradley T. Hunsicker (Wyoming Bar No. 7-4579)
Lacey S. Bryan (Wyoming Bar No. 8-7016)
Markus Williams Young & Hunsicker LLC
2120 Carey Avenue, Suite 101
Cheyenne, WY 82001
Telephone: (307) 778-8178
Facsimile: (303) 830-0809
bhunsicker@MarkusWilliams.com
lbryan@MarkusWilliams.com

ATTORNEYS FOR
DEBTOR-IN-POSSESSION

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re:<br><br>BOTW HOLDINGS, LLC<br><br>Debtor | Case No. 24-20138<br>Chapter 11 (Subchapter V) |
| In re:<br><br>HUSKEMAW OPTICS, LLC<br><br>Debtor | Case No. 24-20141<br>Chapter 11 (Subchapter V) |
| In re:<br><br>BEST OF THE WEST<br>PRODUCTIONS, LLC<br><br>Debtor | Case No. 24-20142<br>Chapter 11 (Subchapter V)<br><br>**Jointly Administered Under<br>Case No. 24-20138**<br><br>**Filing Relates to Case No. 24-20138<br>In re BOTW Holdings, LLC** |

## BOTW HOLDINGS LLC'S SUBCHAPTER V PLAN OF REORGANIZATION

Debtor BOTW Holdings, LLC (the "<u>Debtor</u>" or "<u>Holdings</u>"), debtor and debtor-in-possession in the above-captioned jointly administered chapter 11 case, by and through undersigned counsel, hereby proposes, pursuant to Subchapter V of Chapter 11, Title 11 of the United States Code, the following Plan of Reorganization (the "<u>Plan</u>").

## <u>INTRODUCTION</u>

In this Plan, Holdings proposes to pay existing debts from its disposable income from on-going operations in addition to a obtaining a new loan or capital contribution from Equity Interests prior to the expiration of the 3-year term of the Plan to ensure that all Allowed Claims are paid in full. Holdings believes the terms of this Plan will maximize distributions to the creditors of Holdings.

This Plan is proposed under subchapter V of chapter 11 of the Bankruptcy Code and is subject to confirmation pursuant to section 1191 of the Bankruptcy Code by the United States Bankruptcy Court for the District of Wyoming. Issues related to the merits of the Plan and its confirmation will be the subject of a Confirmation Hearing pursuant to Order of the Bankruptcy Court which will be served upon you.

Creditors are generally entitled to vote to accept or reject the Plan. Holdings seeks acceptance from all Classes of creditors, but even if one or more Classes reject the Plan, the Bankruptcy Court may still confirm the Plan. Section 1191 of the Bankruptcy Code sets forth the requirements the Plan must meet for the Bankruptcy Court to confirm the Plan, including if not all classes vote to accept the Plan.

**Holdings believes that the Plan satisfies all the applicable requirements of section 1191 of the Bankruptcy Code, including that the Plan (i) does not discriminate unfairly, (ii) is fair and equitable to all Classes, and (iii) is in the best interests of Holdings' creditors. Holdings supports confirmation of the Plan and urge all holders of Impaired Claims entitled to vote to accept the Plan.**

**The disclosures contained herein have not been approved by the Securities and Exchange Commission. The Securities and Exchange Commission has not reviewed the accuracy or adequacy of this document.**

The Plan is the governing document or contract with creditors once it is confirmed by the Court.

**WARNING: IF YOU ARE A CREDTIOR YOUR RIGHTS MAY BE IMPAIRED BY THE PLAN.**

## <u>CHAPTER 11 AND PLAN CONFIRMATION</u>

Chapter 11 of the Bankruptcy Code is designed to allow for rehabilitation and reorganization of financially troubled entities or individuals, or for the orderly liquidation of assets for the benefit of creditors. Chapter 11 allows Holdings to retain its assets during administration of the Chapter 11 case as Debtor-in-Possession and following confirmation of a Plan as reorganized Debtor or as provided in the Plan. Once the Plan is confirmed by the Court, the Plan is the permanent restructuring of Holdings' financial obligations.

The Plan divides creditors into Classes of similarly situated creditors. All creditors of the same Class are treated in similar fashion. All ownership interests in Holdings are also classified and treated alike. Each Class of creditors or interest holders is either impaired or unimpaired under the Plan. A Class is unimpaired if the Plan leaves unaltered the legal, equitable and contractual rights to which each creditor in the Class is entitled. Alternatively, a claimant is unimpaired if the Plan provides for the cure of a default and reinstatement of the maturity date of the Claim as it exists prior to the default.

The Bankruptcy Court set a bar date establishing June 18, 2024 for filing Proofs of Claim in Holdings' case.

The Plan provides that Claims and interests of all Classes shall be allowed only if evidenced by a timely filed Proof of Claim or interest or which otherwise appear in the Schedules filed by Holdings and are not scheduled as disputed, contingent, or unliquidated unless subsequently allowed by the Court. Creditors may check as to whether their Claims have been scheduled as disputed, contingent, or unliquidated by reviewing the Schedules filed by Holdings with the Court. Alternatively, creditors may contact counsel for Holdings directly to determine how they have been scheduled.

Bankruptcy Code § 1191 provides that confirmation of the Plan shall occur if the Plan satisfies all provisions of § 1129(a) except § 1129(a)(15), or the Plan satisfies § 1191(c).

## <u>SUMMARY OF PLAN</u>

Holdings seeks confirmation of this Plan pursuant to section 1191(a) of the Bankruptcy Code. The Plan proposes to pay creditors from its disposable income from operations to be received by Holdings in the 3-year period beginning on the date that the first payment is due under the Plan in addition to a obtaining a new loan or capital contribution from Equity Interests prior to the expiration of the 3-year term of the Plan to ensure that all Allowed Claims are paid in full.

The Plan provides for five Classes of creditors and one Class of interest holders. Creditors should refer to Articles 3 through 5 of the Plan for information regarding the precise treatment of their Claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)**

Holdings proposes the following Subchapter V Plan of Reorganization pursuant to section 1189(a) of the Bankruptcy Code.

## ARTICLE I.  DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

### 1.1    Scope of Definitions

For purposes of the Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I.1.2 of the Plan. Any term used in the Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

### 1.2    Definitions

**1.2.01** *Administrative Claim* shall mean a Claim for payment of an administrative expense of a kind specified in Sections 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the applicable Petition Date, of preserving the estate and operating the business of Holdings, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Fee Claims; (c) certain post-petition tax claims; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under Section 503(b) of the Bankruptcy Code.

**1.2.02** *Allowed* means, with reference to any Claim or Equity Interest, a Claim in respect of which a Proof of Claim has been filed with the Bankruptcy Court within the applicable time period of limitation fixed by the Bankruptcy Court or scheduled in the lists of creditors prepared and filed by Holdings with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and as to which no timely objection to the allowance thereof has been filed pursuant to Bankruptcy Rules 3001 and 3007 or as to which any such objection has been determined by a Final Order.

**1.2.03** *Avoidance Actions* means Actions arising under sections 502, 510, 541, 542, 543, 544, 545, 547 through and including 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Actions, and which may be recovered pursuant to section 550 of the Bankruptcy Code.

**1.2.04** ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time.

**1.2.05** ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Wyoming, or any other court of the United States having jurisdiction over the Chapter 11 Case.

**1.2.06** ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended and in effect from time to time.

**1.2.07** ***Bar Date*** means the last date to file proofs of claim or interest against Holdings, June 18, 2024, as established by the Bankruptcy Court.

**1.2.08** ***BOTW Debtors*** means Holdings, together with Huskemaw and Productions.

**1.2.09** ***Business Day*** means any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

**1.2.10** ***Cash*** means legal tender of the United States of America.

**1.2.11** ***Causes of Action*** means any claims, interests, damages, liabilities, judgments, remedies, causes of action, controversies, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, interests, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or noncontingent, liquidated or unliquidated, secured or unsecured, choate or inchoate, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, or equity, or otherwise.   Causes of Action also include:   (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or interests; (c) claims pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law preferential or fraudulent transfer or similar claim.

**1.2.12** ***Chapter 11 Case*** means the above-captioned chapter 11 bankruptcy case.

**1.2.13** ***Claim*** means any right to payment, or right to any equitable remedy for breach of performance if such breach gives rise to the right to payment, against Holdings in existence on or as of the applicable Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, natured, unmatured, disputed, undisputed, legal, secured or unsecured.

**1.2.14** ***Claims Resolution Date*** means the date all objections to Disputed Claims are fully resolved and Allowed Claims are determined on a final basis.

**1.2.15** ***Class*** means any group of Claims or Equity Interests classified by this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**1.2.16** ***Confirmation Date*** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**1.2.17** ***Confirmation Hearing*** means the hearing conducted by the Bankruptcy Court pursuant to sections 1128(a) and 1129 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.2.18** ***Confirmation Order*** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**1.2.19** ***Debtor*** means BOTW Holdings, LLC in its capacity as chapter 11 debtor.

**1.2.20** ***Disposable Income*** shall have the same meaning as set forth Section 1191(d)(2) of the Bankruptcy Code: the income that is received by Holdings and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of Holdings.

**1.2.21** ***Disputed Claim*** means any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent or unliquidated in Holdings' schedules filed in connection with the Chapter 11 Case, or any Claim against which an objection to the allowance thereof has been interposed, and as to which no Final Order has been entered.

**1.2.22** ***Effective Date*** shall mean the first Business Day following the date that is 15 days after the entry of the Confirmation Order. If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first Business Day after the date on which the stay expires or is otherwise terminated.

**1.2.23** ***Equity Interest*** means any membership interest in Holdings or "equity security" of Holdings, as that term is defined in section 101(16) of the Bankruptcy Code.

**1.2.24** ***Estate*** means Holdings' estate as created under section 541 of the Bankruptcy Code.

**1.2.25** ***Fee Claim*** means any Claim by a Professional Person under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and/or reimbursement of expenses in the Chapter 11 Cases.

**1.2.26** *Final Order* means an order or judgment of the Bankruptcy Court which shall not have been reversed, stayed, modified or amended and as to which (a) the time to appeal from or to seek review, rehearing or certiorari shall have expired, and (b) no appeal or petition for review, rehearing or certiorari is pending, or if appealed shall have been affirmed or the appeal dismissed by the highest court to which such order was appealed, or if review, rehearing or certiorari was sought, such review, rehearing or certiorari has been denied and no further hearing, appeal or petition for review, rehearing or certiorari can be taken or granted or as to which any right to appeal or to seek a review, rehearing or certiorari has been waived.

**1.2.27** *General Unsecured Claim* means any Claim against Holdings that is not an Administrative Claim, a Priority Claim, a Secured Claim, or an Equity Interest. General Unsecured Claim includes any unsecured claim held by the holder of a Secured Claim as a result of the operation of section 506(a)(1) of the Bankruptcy Code.

**1.2.28** *Huskemaw* means Debtor Huskemaw Optics, LLC.

**1.2.29** *Impaired* means, with respect to any Class of Claims or interests, a Class of Claims or interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.2.30** *Interest* means any Equity Security (as defined in section 101(16) of the Bankruptcy Code) in Holdings and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in Holdings.

**1.2.31** *IRS* means the Internal Revenue Service.

**1.2.32** *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.2.33** *Local Rules* means the Bankruptcy Local Rules of the United States Bankruptcy Court for the District of Wyoming, as the same may be amended or modified from time to time.

**1.2.34** *McCall* means John A. McCall Jr.

**1.2.35** *MWYH* means Markus Williams Young & Hunsicker, LLC.

**1.2.36** *Petition Date* means April 19, 2024.

**1.2.37** ***Person*** means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

**1.2.38** ***Plan*** means this Chapter 11 Plan, as the same may be amended, supplemented or otherwise modified from time to time, including any exhibits and schedules hereto.

**1.2.39** ***Priority Claim*** means any allowed Claim against Holdings entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim.

**1.2.40** ***Productions*** means Best of the West Productions, LLC.

**1.2.41** ***Professional Person*** means any Person retained or to be compensated by Holdings pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

**1.2.42** ***Projected Disposable Income*** shall mean Holdings' Disposable Income included in the three (3) year projections for Debtor's financial performance attached hereto as <u>Exhibit A</u>.

**1.2.43** ***Pro Rata*** means the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.2.44** ***Proof of Claim*** means any Claim for which an Official Form 410 was filed and docketed in the Chapter 11 Cases.

**1.2.45** ***Reorganized Debtor*** means BOTW Holdings, LLC following the Effective Date of this Plan.

**1.2.46** ***Schedules*** means, collectively, Schedules A through H and the Statement of Financial Affairs, as filed by Holdings in the Chapter 11 Case, as the same may have been or may be amended from time to time.

**1.2.47** ***Secured Claim*** means any Claim secured by a valid and enforceable lien against the property of Holdings, but only to the extent of the value of the collateral securing such Claim.

**1.2.48** ***Stryk Group*** means Stryk Group Holdings, LLC.

**1.2.49** ***Subchapter V Trustee*** means Joli Lofstedt.

**1.2.50 *Unimpaired*** means, with respect to a Class of Claims or interests, a Class consisting of Claims or interests that are not impaired within the meaning of section 1124 of the Bankruptcy Code.

## 1.3   Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

## 1.4   References to Monetary Figures

All references in the Plan to monetary figures and dollar amounts shall refer to Cash, unless otherwise expressly provided for in the Plan.

## ARTICLE II. HISTORY, EVENTS DURING BANKRUPTCY CASE, AND SUMMARY OF ESTATE AND LIABILITIES

## 2.1   BOTW Debtors' Business Operations and Events Leading to Bankruptcy Filings

The BOTW Debtors are Wyoming limited liabilities companies with shared principal offices located at 115 West Yellowstone Avenue, Cody, Wyoming 82414. The BOTW Debtors are involved in the outdoor industry, having evolved from their original focus on outdoor industry video production company to offering long-range shooting systems. Huskemaw and Productions, as well as certain other non-debtor subsidiaries, are owned by Holdings. The majority owner and member of Holdings is Stryk Group. Stryk Group is managed by Jeffrey Edwards and Chase Myers, who also manage the BOTW Debtors. Stryk Group acquired Holdings on or around March 9, 2024.

On February 8, 2018, and nearly six years prior to Stryk Group acquiring Holdings, McCall, a prior member of Productions, commenced a lawsuit against Huskemaw and Productions seeking company dissolution, declaratory judgment and injunctive relief in the District Court of the Fifth Judicial District, State of Wyoming, County of Park (the "State Court"), Civil Action No. 29026 (the "McCall Litigation"). Upon information and belief, Holdings eventually became a named defendant in the McCall Litigation.

On March 19, 2024, and after years of protracted litigation, the State Court entered its Amended Judgment in favor of McCall and against the BOTW Debtors for $2,441,523.57 (the original Judgment was reduced by nearly $1.5 million after BOTW Debtors filed a motion for post judgment relief pursuant to Wyo. R. Civ. P. 59 and 60). Both McCall and the BOTW Debtors filed notices of appeal of the Amended Judgment prior to the Petition Date.

On or around March 14, 2022, and during the pendency of the McCall Litigation, Holdings executed a Promissory Note (the "Note") in the principal amount of $2,500,000.00 in favor of First Bank of Wyoming. The term of the Note was for one-year, which term was extended by agreement of the parties to the Note. Upon information and belief, on the Petition Date the amount due under the Note remained $2,500,000.00 and the term of the Note is set to expire in 2024, with the entire balance due thereunder becoming immediately due and payable.

## 2.2    BOTW Debtors' Bankruptcy Filings and Petition Date Assets

In order to, in part, prevent the dismantling of its operations by a judgment lien creditor to the detriment of all other creditors, including First Bank of Wyoming, the BOTW Debtors filed each filed a voluntary petition under subchapter V of chapter 11 of the Bankruptcy Code with the Bankruptcy Court on April 19, 2024 (for Holdings), April 21, 2024 (for Huskemaw), and April 22, 2024 (for Productions).

On April 24, 2024, the Court entered its *Order Directing Joint Administration of Related Chapter 11 Cases for Procedural Purposes Only and Entry of Related Relief* [Doc. 13, Case No. 24-20138] pursuant to which the BOTW Debtors' chapter 11 cases are jointly administered for procedural purposes only under BOTW Holdings, LLC, case no. 24-20138. The BOTW Debtors remain in possession of their property and manage their affairs as debtors in possession pursuant to 11 U.S.C. §§1107 and 1108. Joli Lofstedt serves as the BOTW Debtors' subchapter V trustee pursuant to Bankruptcy Code section 1183. MWYH was approved as BOTW Debtors' counsel in each of the BOTW Debtors' bankruptcy cases, including the Bankruptcy Case effective as of the Petition Date, on May 14, 2024.

Descriptions of Holdings' Petition Date assets are set forth in the Schedules filed with the Bankruptcy Court. Interested parties may request copies of the Schedules from Holdings' counsel. Holdings' non-exempt assets, with book values as of the Petition Date are as follows:

| Asset | Value |
|-------|-------|
| Financial accounts | $19,500 |
| 2022 Dodge Ram | $36,200 |
| Deposits and prepayments | $79,800 |
| Ownership interests in Huskemaw, Productions, Best of the West Arms, LLC, | Unknown |

| Best of the West Ammo, LLC, and Long Range Store, LLC | |
|---|---|

Holdings does not intend to pursue any Avoidance Actions at this time. Existing management's familiarity with Holdings and its business provides various efficiencies not available to a chapter 7 trustee. Thus, it is Holdings' position that this Plan provides the best available recoveries to creditors.

## 2.3    Events in the BOTW Debtors' Chapter 11 Cases

At the outset of the BOTW Debtors' chapter 11 cases, the BOTW Debtors filed a *Motion for Entry of Order: (I) Authorizing, But Not Directing, the Debtors to (A) Pay Prepetition Employee Wages, Salaries and Other Compensation and (B) Continue Employee Benefits Programs, and (III) Granting Related Relief* (the "Wage Motion") and a *Motion for Entry of Interim and Final Orders: (A) Approving Adequate Assurance of Payment to Utility Providers; (B) Establishing Procedures for Resolving Objections by Utility Providers; (C) Prohibiting Utility Providers from Discontinuing, Altering or Refusing Service; (D) Schedule a Final Hearing; and (E) Granting Related Relief* (the "Utility Motion" and together with the Wage Motion, the "First Day Motions"). No objections were filed to the First Day Motions. The Court held a hearing on the First Day Motions on May 8, 2024, and at which time it granted the Employee Motion on a final basis and the Utility Motion on an interim basis. The Utility Motion was granted on a final basis on June 7, 2024.

On May 13, 2024, the BOTW Debtors filed the *Motion for Entry of Order Excusing Compliance with 11 U.S.C. § 345(b) and Authorizing Establishment of Certain Bank Accounts for the Debtors in Possession* (the "Bank Account Motion"), requesting authorization to establish certain bank accounts with First Bank of Wyoming. No objections to the Bank Account Motion were filed, and the Court granted the Bank Account Motion on May 15, 2024.

On May 20, 2024, the BOTW Debtors filed *The Debtors' Motion to Approve Insurance Premium Financing Pursuant to 11 U.S.C. § 364* (the "Premium Financing Motion"), requesting authorization for the BOTW Debtors to incur post-petition secured debt in the form of insurance premium financing. No objections to the Premium Financing Motion were filed, and the Court granted the Premium Financing Motion on June 17, 2024.

On July 2, 2024, the Court entered the *Order Establishing Interim Compensation Procedures and Billing Methodology for Debtors' Counsel*, authorizing MWYH to track and allocate its services provided and/or fees and costs expended pursuant to which applicable BOTW Debtor benefited from such services or fees. Specifically, to the extent a single BOTW Debtor benefits from services provided and/or fees expended by MWYH, the Court has Ordered that such BOTW Debtor will be solely responsible for the payment

of such fees and expenses. To the extent services provided and/or fees and costs expended benefit more than one BOTW Debtor, or the BOTW Debtors collectively ("<u>Collective Benefit Fees</u>"), the Court has Ordered that the BOTW Debtors shall share responsibility for the payment of such Collective Benefit Fees, to be allocated as follows based on the respective retainer amounts previously paid: Holdings: 55%, Huskemaw: 35%, and Productions: 10%.

On July 3, 2024, McCall filed the *Creditor John A. McCall, Jr.'s Motion for Relief from Stay*, requesting relief from the automatic stay to continue his appeal of the Amended Judgment in the McCall Litigation.

Additionally, on July 10, 2024, McCall filed the *Creditor John A. McCall, Jr.'s Motion to Extend Deadline for Filing Proofs of Claim and Notice of Time to Object*, requesting the Court retroactively grant an extension of the Bar Date with respect to his untimely filed Proof of Claim.

## 2.4    <u>Description of Liabilities</u>

### 2.4.01 Administrative Claims.

Administrative Claims, including Fee Claims incurred during the case which remain unpaid, are as follows:

#### a. MWYH

Holdings retained MWYH as its bankruptcy counsel. MWYH has not yet filed a fee application in this Chapter 11 Case. Holdings provided MWYH with a retainer earmarked for post-petition services in the amount of $60,767.75. Holdings estimates that, after application of the retainer, there will not be an Administrative Claim for unpaid legal fees owed to MWYH. The legal fees could increase or decrease.

#### b. Subchapter V Trustee

Holdings estimates that there will be an Administrative Claim for unpaid Subchapter V Trustee fees on the Effective Date of the Plan of approximately $5,000. However, the fees could increase or decrease.

Holdings does not believe there will be any other Administrative Claims asserted against the estate.

### 2.4.02 Priority Claims

The following Priority Claims were filed in this case:

| Claim No. | Claimant | Priority Portion | Basis |
|-----------|----------|------------------|-------|
| 2-3 | IRS | $ 100.00 | 507(a)(8) Taxes |

The Priority Claim filed by the IRS is based entirely on estimated tax liability. Holdings is presently in the process of providing the IRS with the requisite documentation and otherwise evaluating the Priority Claim asserted against it. Holdings anticipates that the Priority Claim of the IRS will be eliminated.

Holdings also listed a number of Priority Claims on its Schedules for unpaid pre-petition wages in "Unknown" amounts, as well as Priority Claims for Utah and Wyoming taxing authorities. No Proofs of Claims were filed evidencing any such Priority Claims, and Holdings believes there are no Priority Claim amounts owed on account of such Claims.

The Priority Claims, to the extent Allowed, are classified under Class 1 and their treatment is discussed in Section 5.1.

### 2.4.03 Secured Claims

The following Secured Claims were filed in this case:

| Claim No. | Claimant | Secured Portion | Basis |
|-----------|----------|-----------------|-------|
| 1 | Chrysler Capital | $33,713.79 | PMSI on 2022 Dodge Ram 1500 |
| 7 | John A. McCall | $2,751,656.00 | UCC-1 Filing against Productions |

Chrysler Capital asserts a Secured Claim in the amount of $33,713.79 related to a perfected purchase money security interest in a 2022 Dodge Ram. The collateral is being retained and used by Holdings. The Secured Claim of the Chrysler Capital is classified under Class 2 and its treatment is discussed in Section 5.2.

McCall asserts a Secured Claim in the amount of $2,751,656.00 related to a UCC-1 Financing Statement filed on July 13, 2016 against Productions only. By operation of law, McCall does not hold a Secured Claim against Holdings, insofar as it does not have an enforceable security interest against Holdings. The Secured Claim filed by McCall was not filed pursuant to Fed. R. Bankr. P. 3001(d) insofar as there is no evidence of a perfected security interest against Holdings. The Secured Claim asserted by McCall is classified under Class 3 and its treatment is discussed in Section 5.3.

### 2.4.04 General Unsecured Claims

Holdings scheduled the following General Unsecured Claims in this case:

| Claimant | Scheduled Claim Amount | Comments |
|---|---|---|
| AFLAC | $1,466.46 | |
| AFLAC-Argus | $3,840.24 | |
| Avalara Inc. | $1,495.24 | |
| Black Hills Energy | $781.75 | |
| City of Cody Utilities | $1,326.77 | |
| Dex Imaging | $253.10 | |
| First Bank of Wyoming | $2,500,000.00 | |
| John McCall | $2,441,523.57 | Scheduled as contingent, unliquidated, and disputed |
| Proffit's Enterprises | $245.00 | |
| Safari Club International | $3,400.00 | |
| SBW & Associates PC | $1,375.00 | |
| Terminix of Wyoming | $83.00 | |
| Yellowstone Natural Holdings | $80,000.00 | |

The Bar Date for filing Proofs of Claims against Holdings was June 18, 2024.

Timely filed Proofs of Claims against Holdings evidencing General Unsecured Claims include the following:

| Claim No. | Claimant | General Unsecured Portion |
|---|---|---|
| 2-3 | IRS | $1,298.00 |
| 3 | Jack Peterson | Unknown |
| 4 | Dale Caldwell | Unknown |
| 5 | First Bank of Wyoming | $2,502,732.24 |
| 6 | First Bank of Wyoming | $2,526.55 |

McCall filed a Proof of Claim with a general unsecured portion of $1,846,490.00. The General Unsecured Claim of McCall was untimely filed after the Bar Date and thus is not treated in and shall receive no payments under this Plan.

Black Hills Energy likewise filed a Proof of Claim after the Bar Date in the amount of $1,015.55. Insofar as Holdings included Black Hills Energy on its Schedules as an undisputed General Unsecured Claim, the General Unsecured Claim of Black Hills Energy, as evidenced by its Proof of Claim, will be treated as an Allowed General Unsecured Claim in this Plan.

All timely filed and Allowed General Unsecured Claims asserted against Holdings are classified under Classes 4 and 5, and their treatment is discussed in Section 5.4 and 5.5.

### 2.5    Descriptions of Interest Holders

Holdings is owned by Stryk Group.

### 2.6    Executory Contracts and Unexpired Leases

Holdings is party to the following executory contracts and unexpired lease executed prior to the Petition Date, as evidenced by Holdings' Schedules:

| Contract Counterparty | Basis of Contract | Assume or Reject |
|---|---|---|
| Apex Hunting Solutions | Sales/Marketing Consulting Agreement | Assume |
| Dex Imaging | Lease of Ricoh Copier | Assume |
| Metlife | Employee Insurance | Assume |
| Michaletz Holdings, LLC | Accounting, Training and Consultation | Assume |
| Spotted Bear Marketing, LLC | Marketing Services | Assume |
| Stryk Group USA | Consulting Services | Assume |
| Yellowstone Ave, LLC | Commercial Lease | Assume |

The above-referenced creditors did not file Proofs of Claim and Holdings asserts all post-petition amounts that became due and payable have been satisfied.  As a result, the cure amounts required under 365(b) for each of the foregoing is $0.

Notwithstanding the foregoing and the proposed assumptions contained herein, nothing in this Plan shall deem any of the above-described contracts and/or leases to be executory contracts and unexpired leases as such terms are used under the Bankruptcy Code.

### 2.7    Post-Petition Income

Holdings has continued its operations post-petition. Accordingly, the funds to be distributed to timely filed Allowed Claims under the Plan are comprised, in part, of Holdings' Disposable Income.

## ARTICLE III. TREATMENT OF ADMINISTRATIVE CLAIMS AND PROFESSIONAL CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Fee Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article IV hereof.

## 3.1   Administrative Claims

All Administrative Claims against the Estate, including Fee Claims, shall be treated as follows:

### 3.1.01 Time for Filing

All holders of Administrative Claims, including Professional Persons holding Fee Claims, shall file with the Bankruptcy Court a request for payment of such Claims within sixty (60) days after the Effective Date. Contemporaneously with filing with the Bankruptcy Court, any such request must be served on the Reorganized Debtor and its counsel, and must, at a minimum, set forth (i) the name of the holder of the Administrative Claim; (ii) the amount of the Administrative Claim; and (iii) the basis for the Administrative Claim. A failure to file any such request in a timely fashion will result in the Administrative Claim in question being discharged and its holder forever barred from asserting such Administrative Claim against the Estate or any other Person.

### 3.1.02 Allowance

An Administrative Claim for which a request for payment has been properly filed shall become an Allowed Administrative Claim unless an objection is filed by the applicable deadline. If an objection is timely filed, the Administrative Claim in question shall become an Allowed Administrative Claim only to the extent so Allowed by Final Order of the Bankruptcy Court.

### 3.1.03 Payment

The holders of Allowed Administrative Claims (including Fee Claims) shall receive Cash equal to the amount of their Allowed Administrative Claim, or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such Claims. Such Claims shall be paid on the later of (i) the Effective Date; (ii) the first Business Day after the date that is thirty (30) calendar days after the date on which such Administrative Claim is Allowed by Bankruptcy Court order; or (iii) as otherwise agreed by Holdings and the claimant.

## ARTICLE IV. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

All Claims against, and Equity Interests in, Holdings are classified for all purposes, including voting, confirmation, and distribution, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Allowed Priority Claims | No | No |
| 2 | Secured Claim of Chrysler Capital | No | No |
| 3 | Secured Claim of McCall | No | No |
| 4 | Allowed General Unsecured Claims | Yes | Yes |
| 5 | Allowed General Unsecured Claims | Yes | Yes |
| 6 | Equity Interests in Holdings | No | No |

Administrative Claims, including Fee Claims, are not classified for purposes of voting or receiving distributions under the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code. Instead, all such Claims shall be treated separately as unclassified claims on the terms previously set forth in Article III of this Plan.

## ARTICLE V. TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 5.1    Class 1 – Allowed Priority Claims

Each such holder of an Allowed Priority Claim shall be treated as a Class 1 Claim and shall receive the full amount of each Allowed Class 1 Claim in accordance with section 1129(a)(C): Holders of such Priority Claims shall receive regular installment payments in cash: (1) of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim; (2) over a period ending not later than 5 years after the Petition Date; and, (3) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan.

The IRS filed the only Priority Claim against Holdings, based on estimated tax liability. Holdings anticipates that the Priority Claim of the IRS will be further reduced if not entirely eliminated.  In the event it is deemed that the IRS does have a valid Claim, it shall be paid in full within sixty (60) days of the Effective Date.

Class 1 is unimpaired.

### 5.2    Class 2 – Secured Claim of Chrysler Capital

The Allowed Secured Claim of Chrysler Capital is secured by a 2022 Dodge Ram 1500. The 2022 Dodge Ram 1500 is owned by Holdings. The allowed Secured Claim of Chrysler Capital in the amount of $33,713.79 shall accrue interest at the annual contract

rate of 1.9% and be paid in the regular contractual monthly installments of $993.79 until paid in full. Chrysler Capital shall retain its lien to the extent of the amount of the Allowed Class 2 Secured Claim until the Allowed Class 2 Secured Claim is paid in full.

Class 2 is unimpaired.

**5.3    Class 3 – Secured Claim of McCall**

The Secured Claim of McCall is a Disputed Claim as to Holdings. By operation of law, McCall does not hold a Secured Claim against Holdings, insofar as it does not have an enforceable security interest against Holdings. The Secured Claim filed by McCall was not filed pursuant to Fed. R. Bankr. P. 3001(d) insofar as there is no evidence of a perfected security interest against Holdings. As such, no payments will be made as to Class 3.

Class 3 is unimpaired.

**5.4    Class 4 – General Unsecured Claims Over $3,000**

Except to the extent that a Holder of an Allowed General Unsecured Claim agrees in writing to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed General Unsecured Claim, Class 4 Holders of Allowed General Unsecured Claims shall receive Holdings' Projected Disposable Income for a three-year period beginning on the Effective Date. Class 4 Claims shall be paid on a Pro Rata basis in quarterly installments beginning the first full calendar quarter after the Effective Date. In addition, all remaining balances owed on Allowed General Unsecured Claim after the 3-year term of the Plan shall be paid in full within thirty (30) days following the expiration of the three-year period beginning on the Effective Date from either a new loan or capital contribution from Equity Interests. Class 4 is impaired.

**5.5    Class 5 - General Unsecured Claims of $3,000 or Less**

Except to the extent that a Holder of an Allowed General Unsecured Claim agrees in writing to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed General Unsecured Claim, Class 5 Holders of Allowed General Unsecured Claims shall be paid in full within thirty (30) days after the Effective Date. Class 5 is impaired.

**5.6    Class 6 – Equity Interests**

Class 6 includes the Equity Interests of Holdings, which interests are unimpaired by the Plan. Upon confirmation of the Plan, the interest holders in Holdings shall continue to maintain their identical ownership interests in Holdings.

## VI.   EXECUTION AND IMPLEMENTATION OF THE PLAN

### 6.1   Operation of Business

The Reorganized Debtor shall be empowered to take such action as may be necessary to perform its obligations under this Plan.

### 6.2   Management

On the Effective Date, Chase Myers shall be appointed as the COO of the Reorganized Debtor pursuant to Section 1142(b) of the Bankruptcy Code for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary or convenient to consummating the terms of the Plan, including, but not limited to, executing documents.

### 6.3   Vesting of Assets

All assets of the Estate shall vest in the Reorganized Debtor on the Effective Date and shall be under the sole and exclusive control and management of Chase Myers and Chase Myers or his designee shall have full power and authority to hold, sell, assign, or transfer any such assets on behalf of the Reorganized Debtor.

### 6.4   Plan Payments

On and after the Effective Date, Holdings, through Chase Myers as disbursing agent, shall make the payments required by this Plan to the holders of Allowed Claims. The payments pursuant to the Plan shall be in full and complete payment, settlement and satisfaction of all claims against the Estate and Holdings.

### 6.5   Claims and Litigation Bar Date and Standing

All Claim objections in the case must be filed on or within ninety (90) days after the Effective Date. The Reorganized Debtor shall have standing to commence, prosecute, and settle Claim objections without need for Bankruptcy Court approval. The Reorganized Debtor anticipates retaining Markus Williams Young & Hunsicker LLC to litigate any Claim objections on an hourly basis, as it determines is reasonable and in the best interest of the estate.

### 6.6   Disputed Claim Procedure

Payments to any Class of creditors will only be made on account of Allowed Claims. In the event that payments are made at a time that a Claim objection is pending before the Bankruptcy Court or a judgment has entered to establish a Claim and the judgment is not subject to a Final Order, the portion of the payment that would be paid to the disputed claimant will be held by the Reorganized Debtor until the Claim is allowed or disallowed. If allowed, the Claim will be paid the withheld payment(s).

**6.7**   **Setoffs**

The Reorganized Debtor may, but shall not be required to, set off against any Allowed Claim and the payments or other distributions to be made pursuant to this Plan in respect of such Allowed claim, claims of any nature whatsoever the Reorganized Debtor may have against the holder of such Allowed Claim, but neither the failure to do so, nor the allowance of any claim hereunder, shall constitute a waiver or release by the Reorganized Debtor of any claim that the Reorganized Debtor may have against such holder.

**6.8**   **Executory Contracts**

**6.8.01 Assumption**

Holdings is party to the following executory contracts and unexpired lease executed prior to the Petition Date, as evidenced by Holdings' Schedules:

| Contract Counterparty | Basis of Contract | Assume or Reject |
|---|---|---|
| Apex Hunting Solutions | Sales/Marketing Consulting Agreement | Assume |
| Dex Imaging | Lease of Ricoh Copier | Assume |
| Metlife | Employee Insurance | Assume |
| Michaletz Holdings, LLC | Accounting, Training and Consultation | Assume |
| Spotted Bear Marketing, LLC | Marketing Services | Assume |
| Stryk Group USA | Consulting Services | Assume |
| Yellowstone Ave, LLC | Commercial Lease | Assume |

The above-referenced creditors did not file Proofs of Claim and Holdings asserts all post-petition amounts that became due and payable have been satisfied.  As a result, the cure amounts required under 365(b) for each of the foregoing is $0.

Notwithstanding the foregoing proposed assumptions, nothing in this Plan shall deem any of the above-described contracts and/or leases to be executory contracts and unexpired leases as such terms are used under the Bankruptcy Code.

**6.8.02 Rejection**

All executory contracts and unexpired leases that have not otherwise been assumed pursuant to Section 365 of the Bankruptcy Code (after notice, a hearing and an order specifically authorizing assumption) prior to confirmation of the Plan and which are not identified in the foregoing paragraph, shall be rejected on the Confirmation Date, subject to the occurrence of the Effective Date. Any and all claims for damages arising from such

rejection shall be filed with the Court on or before thirty (30) days after the Confirmation Date.

### 6.9    Quarterly Installments

When the Plan provides for payment in quarterly installments, the installment payment shall be due thirty (30) days after the last day of the prior quarter, unless otherwise specified in the Plan. The Reorganized Debtor shall then have a thirty (30) day grace period within which the payment must be received by the payee before the Reorganized Debtor shall be in default unless a longer period is specified elsewhere in the Plan.

## ARTICLE VII. MODIFICATION OF PLAN, CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE

### 7.1    Amendments and Modifications

Prior to Confirmation, Holdings may propose amendments or modifications of the Plan in a manner consistent with the Bankruptcy Code. Following confirmation of the Plan, Holdings may propose amendments or modifications of the Plan at any time prior to substantial consummation, with leave of the Court, upon such notice as may be required by the Court. Any provisions which the Court may determine render this Plan unconfirmable, may be severed or altered. After confirmation, Holdings may, with approval of the Court, and so long as it does not materially or adversely effect the interests of a claim holder, render any defect or omission, or reconcile inconsistencies in the Plan or in the order of confirmation, in such manner as may be necessary to carry out the purposes and the intent of the Plan.

### 7.2    Conditions to Effective Date

Notwithstanding any other provision of the Plan or the entry of an order confirming this Plan, the Plan shall not become effective and Holdings shall not be required to perform its obligations under the Plan unless and until the following events have occurred or have been performed:

(a)  The Plan shall have been confirmed by Final Order.

(b)  No request for revocation of the order confirming the Plan under Section 1144 of the Bankruptcy Code shall have been made and granted or pending.

### 7.3    Waiver and Nonfulfillment of Conditions

Holdings may waive any of the conditions set forth in the Plan in its sole and absolute discretion.

## ARTICLE VII. MISCELLANEOUS

### 8.1    Documents and Agreements

All parties bound by this Plan shall execute all documents, releases, notes, deeds of trust, assignments or other agreements necessary or desirable to implement the Plan. If any necessary party refuses or fails to execute, deliver or join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the Plan or perform any other act, including the satisfaction of a lien necessary to consummation of the Plan, or execution of an assignment pursuant to the Plan, the Court may order the same or order the Clerk of the Court to execute the document, release, assignment or other instrument or agreement.

### 8.2    Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of Holdings, whether arising before or after the Petition Date, which, for the avoidance of doubt, shall become property of Reorganized Debtor, and Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by Holdings pursuant to the releases and exculpations contained in the Plan, which shall be deemed released and waived by Holdings and Reorganized Debtor as of the Effective Date or as otherwise provided in the Plan.

### 8.3    Effect of Confirmation Order

Except as provided for in this Plan, the Confirmation Order shall be a judicial determination of satisfaction of all claims against Holdings with regard to all debts that arose before the Effective Date and any liability on a claim that is determined under Section 502 of the Bankruptcy Code as if such claim had arisen before the Effective Date, whether or not a proof of claim based on any such date or liability is filed under Section 501 of the Bankruptcy Code and whether or not a claim based on such debt or liability is allowed under Section 502 of the Bankruptcy Code.

### 8.4    Enforcement of Claims and Reservation of Rights

The Reorganized Debtor shall retain and enforce (or compromise and settle) all claims belonging to Holdings or the Estate pursuant to 11 U.S.C. § 1123(b)(3), including, but not limited to, all claims under Sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any claims arising or owing under any insurance policies or contracts of insurance. Except as otherwise explicitly provided in this Plan, nothing shall affect

Holdings' or the Estate's claim, causes of action, rights and defenses, both legal and equitable with respect to any claim filed or asserted against Holdings or the Estate, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoffs or recoupment and all such rights and defenses. Instead, these claims, causes of action, rights and defenses of Holdings and the Estate shall be deemed specifically reserved and shall not be deemed, waived or abandoned at any time.

## 8.5    Headings

The headings used in the Plan are solely for the convenience of the reader and do not in any way limit, expand or modify the provisions of the Plan to which they refer.

## 8.6    Controlling Document

In the event of an inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## 8.7    Exculpation

Neither Holdings, nor any attorney or professional employed by Holdings or the Estate will have or incur any liability for any act or omission in connection with, arising out of, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence, and in all respects, will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## 8.8    Final Decree

The Reorganized Debtor will request entry of a final decree closing the case on or before the later of the date all Claim objections and any pending litigation is concluded or one hundred eighty (180) days after the Effective Date of the Plan or as otherwise required pursuant to orders of the Bankruptcy Court and the Bankruptcy Code and Bankruptcy Rules.

## 8.9    Exemption from Transfer Taxes

Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan by Holdings or Reorganized Debtor, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan or the agreements thereunder shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**8.10    Contractual Relationship**

The Plan, upon confirmation, constitutes a new contractual relationship by and between the Reorganized Debtor and its creditors. In the event of a default by the Reorganized Debtor under the Plan, creditors shall not be entitled to enforce any rights and remedies against the Reorganized Debtor for breach of contract under the Plan unless and until written notice of the default is provided to the Reorganized Debtor in accordance with this section.  The notice must provide the Reorganized Debtor a thirty (30) day period within which to cure the claimed default, unless a longer period is specified elsewhere in the Plan. Upon the Reorganized Debtor's failure to cure the default within such thirty (30) day period, the creditor may proceed to exercise its rights and remedies.  For the avoidance of doubt, until such time as the Reorganized Debtor fails to cure the default within such thirty (30) day period, the creditor shall be disallowed and barred, estopped, and enjoined from asserting or attempting to enforce the Claim against the Reorganized Debtor.

**8.11    Satisfaction of Claims**

Confirmation of the Plan and the occurrence of the Effective Date shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan. Any obligation or note, previously in default, so modified, shall be cured as modified as of the Effective Date. This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

**8.12    Severability**

If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**8.13    Notices**

All notices, requests, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified. All communications will be deemed delivered when received at the following addresses:

    a.    To Holdings or Reorganized Debtor:

        Bradley T. Hunsicker
        Markus Williams Young & Hunsicker, LLC
        2120 Carey Avenue, Suite 101
        Cheyenne, WY 82001
        Email: bhunsicker@markuswilliams.com

4875-1897-5186, v. 1

With a copy to:

Chase Myers
115 West Yellowstone Avenue
Cody, WY 82414
Email: chase@botwholdings.com

      b.     To an allowed claimant, at the address set forth in the allowed Proof of Claim, if filed, or at the address set forth for the claimant in Holdings' Schedules filed with the Bankruptcy Court.

## 8.14   Successors and Assigns

The Plan will be binding upon Holdings, the Reorganized Debtor, any creditor affected by the Plan and its heirs, successors, assigns and legal representatives.

## ARTICLE IX. JURISDICTION OF THE COURT

## 9.1   Jurisdiction Retained

The Court will retain jurisdiction until this Plan has been fully consummated for the following purposes:

(a)   The allowance, disallowance of classification of any claim or interests and the determination of such objections as may be filed to the claims or interests.

(b)   Determination of all questions and disputes regarding title to the assets to be administered pursuant to the Plan, and the determination of all causes of actions, controversies, disputes or conflicts whether or not subject to an action pending as of the date of confirmation between the representative of the Estate and any other party, including but not limited to, the right of the Estate to recover or avoid transfers pursuant to the provisions of the Bankruptcy Code.

(c)   The correction of any defect, curing of any omission, or reconciliation of any inconsistency in the Plan or order of confirmation as may be necessary to carry out the purposes of the Plan.

(d)   Modification of the Plan after confirmation pursuant to the Rules of Bankruptcy Procedure and Title 11 of the Bankruptcy Code.

(e)   The enforcement and interpretation of the terms and conditions of the Plan.

(f)     The entry of any order, including injunctions, necessary to enforce the title, rights and powers of Holdings and to impose such limitations, restrictions and terms and conditions of such title rights and powers as this Court may deem necessary.

(g)     The entry of a final decree terminating this case.

## ARTICLE X. DISCHARGE

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date, Holdings will be discharged from any debt that arose before confirmation of the Plan, to the extent specified in section 1141(d)(1)(A) of the Bankruptcy Code, except that Holdings will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in section 1141(d)(6) of the Bankruptcy Code.

If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, then Holdings shall not receive a discharged until it satisfies its obligations under the Plan during the three-year term of the Plan.

## ARTICLE XI. PLAN FEASIBILITY

Holdings believes that the Plan, as proposed, is feasible.

Holdings projects having approximately $200,000 of cash on the Effective Date. Funding for the Plan will come from Holdings' continued operations and then a lump sum payment through a loan or capital infusion to conclude payments to all Allowed Claims in the form of a balloon payment or capital contribution at the end of three years from the Effective Date.

Holdings believes its projections, attached hereto as <u>Exhibit A</u>, are conservative and achievable. For purposes of this Plan only, Holdings' financial projections are consolidated with the projections of Holdings' wholly owned subsidiaries. The additional projected disposable income of these non-debtor affiliates are provided for transparency, and to avoid the unnecessary cost and expense of obtaining a liquidation value of Holdings after first attempting to obtain liquidation values for Holdings' wholly owned subsidiaries which would arguable be included in Holdings' liquidation value (a component that could increase or decrease Holdings' liquidation value).  Holdings has deemed it more prudent to avoid the expensive and otherwise time-consuming process of obtaining liquidation values for multiple debtor and non-debtor entities (which would likely otherwise be unachievable based solely on the timeline for a subchapter V bankruptcy case) by simply paying all Allowed Claims in full if this Plan can be confirmed.  In the event this Plan is not confirmed, Holdings makes no representations or warranties as to the willingness of Holdings' wholly owned subsidiaries to contribute resources for any subsequently filed

chapter 11 plan. Holdings estimates it will have sufficient Cash to satisfy its Plan obligations, including sufficient cash on hand to pay Allowed Administrative Claims in full on the Effective Date.

Holdings' Projections show Holdings' projected income for August-December 2024 is $1,950,000. The projected expenses for August-December 2024 are $1,881,809.05 inclusive of payments on account of Administrative Claims and Allowed Class 2 and 5 Claims. Class 4 Claims will receive Projected Disposable Income in August-December 2024 in the amount of $219,672.10.

Holdings' Projections show Holdings' annual projected income for 2025 is $4,992,000. The projected expenses for 2025 are $4,498,125.48 inclusive of payments on account of the Allowed Class 2 Claim. Class 4 Claims will receive Projected Disposable Income in 2025 in the amount of $527,213.04.

Holdings' Projections show Holdings' annual projected income for 2026 is $5,341,440. The projected expenses for 2026 are $4,782,345.48 inclusive of payments on account of the Allowed Class 2 Claim. Class 4 Claims will receive Projected Disposable Income in 2026 in the amount of $527,213.04.

Holdings' Projections show Holdings' annual projected income for 2027 is $5,608,512. The projected expenses for 2027 are $5,149,455.88 inclusive of payments on account of the Allowed Class 2 Claim. Class 4 Claims will receive Projected Disposable Income, including an infusion of either loan proceeds or capital, in the amount of $1,308,634.06.

Holdings projects that the holders of Allowed Class 4 Claims will receive payment of 100% of their Claims within thirty (30) days after the expiration of the three years after the Effective Date.

## ARTICLE XII. LIQUIDATION ANALYSIS

To confirm the Plan, the Court must find that all creditors and Interest holders who do not accept the Plan will receive at least as much under the Plan as such creditors and Interest holders would receive in a chapter 7 liquidation. Insofar as Holdings proposes to pay all Allowed Claims in full under the Plan, the holders of Allowed General Unsecured Claims will therefore receive more under the Plan than would be received in a chapter 7 liquidation.

## ARTICLE XIII. TAX CONSEQUENCES

Holdings is not providing tax advice to creditors or interest holders. Each party affected by the Plan should consult its own tax advisor for information as to the tax

consequences of Plan confirmation. Generally, unsecured creditors should have no tax impact as a result of Plan confirmation. The recovery of each creditor is payment on account of a debt and generally not taxable, unless the creditor wrote off the debt against income in a prior year, in which case income may have to be recognized. Interest holders may have complicated tax effects as a result of Plan confirmation.

## ARTICLE XIV. CONFIRMATION REQUEST

Holdings, as the proponent of the Plan, requests confirmation of the Plan pursuant to Section 1191 of the Bankruptcy Code.

DATED: July 18, 2024.

BOTW HOLDINGS, LLC

By: Member, Stryk Group Holdings, LLC

By: */s/*_____

Chase Myers, Manager

MARKUS WILLIAMS YOUNG &
HUNSICKER LLC

By: */s/ Bradley T. Hunsicker*_____
Bradley T. Hunsicker (Wyoming Bar No. 7-4579)
2120 Carey Avenue, Suite 101
Cheyenne, WY 82001
Telephone: (307) 778-8178
Facsimile: (307) 638-1975
bhunsicker@MarkusWilliams.com

*Counsel for the Debtor and Debtor-in-Possession*