Clark Stith
505 Broadway
Rock Springs, WY 82901
clarkstith@wyolawyers.com
Phone: (307) 382-5565
Fax: (307) 382-5552
W.S.B. 6-3176
Attorney for Creditor John A. McCall, Jr.

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re:<br><br>    BOTW Holdings, LLC<br><br>        Debtor. | ) <br> ) <br> ) <br> )  Case No. 24- 20138<br> )  Chapter 11<br> ) <br> ) |
| In re:<br><br>    HUSKEMAW OPTICS, LLC | ) <br> )  Case No. 24- 20141<br> )  Chapter 11<br> ) |
| In re:<br><br>    BEST OF THE WEST<br>PRODUCTIONS, LLC | ) <br> )  Case No. 24- 20142<br> )  Chapter 11<br> ) <br> )  **Filed With Respect To Case No. 24-**<br> )  **20142**<br> ) |

**CREDITOR JOHN A. MCCALL, JR.'S**
**MOTION FOR DERIVATIVE STANDING TO PURSUE FRAUDULENT**
**TRANSFER CLAIMS ON BEHALF OF BEST OF THE WEST PRODUCTIONS,**
**LLC AND**
**NOTICE OF OPPORTUNITY TO OBJECT**

Creditor John A. McCall, Jr. ("Creditor") hereby moves the court to confer derivative standing on Creditor to pursue fraudulent transfer claims held by debtor in possession Best of the West Productions, LLC ("Productions").  Creditor seeks to file an adversary complaint substantially in the form as attached as Exhibit A hereto for the purpose of recovering assets rightfully belonging to Productions' bankruptcy estate for the benefit of creditors.

As discussed in greater detail below, prior to filing bankruptcy Productions and its insiders (other than Creditor) engaged in a scheme to defraud Creditor by removing millions of dollars of assets from Productions' balance sheet and transferring those assets to companies owned and controlled by the same insiders.  There are sound policy reasons to allow derivative standing in this chapter 11 case.  The debtor in possession has an irreconcilable conflict of interest.  Indeed, the transfers alleged here were part of a scheme by debtor to defraud Creditor by shuffling its assets during litigation between Debtors and Creditor from debtor to newly created affiliated entities with common ownership with debtor Productions.  Specifically, as it became clear during 2020 that Creditor would likely prevail in state court against Productions, debtor Productions caused three other entities to be created, BOTW Holdings, LLC ("Holdings"), Best of the West Arms, LLC ("Arms") and Best of the West Ammo, LLC ("Ammo"), with Holdings owning all of Productions, Arms and Ammo.  The assets of Productions were then

2

transferred for little or no consideration to Arms and Ammo in an effort to prevent

Creditor from collecting on an eventual judgment. In addition, Productions' assets were

also transferred to an existing company, debtor Huskemaw Optics, LLC ("Huskemaw").

Debtor Productions, which has failed to pursue fraudulent transfer claims despite

Creditor's request, has a motive to not pursue such claims against Arms. Ammo or

Huskemaw because debtor Productions' purpose in creating Arms and Ammo was to

effectuate such fraudulent transfers.

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

On or about July 1, 2016, Best of the West Productions, LLC ("Productions")

obtained a line of credit (the "Loan") from Wells Fargo Bank N.A. ("Wells Fargo") in the

amount of $500,000. *See* Declaration of John A. McCall, Jr. ("McCall Decl."),¶2,

Exh. A. Productions granted Wells Fargo a security interest in Productions' inventory,

equipment and accounts receivable. *Id.*,¶3. At the time of the Loan matured, Creditor

McCall was a member of Productions with more than a one-third equity ownership interest

in the company. *Id., ¶5.* As a condition of the Loan, Creditor both guaranteed the Loan

and granted Wells Fargo a security interest in his personal Wells Fargo Advisors LLC's

account. McCall Decl., ¶5.

As a more than one-third owner of Productions, Creditor was familiar with its

assets and operations. McCall Decl., ¶7. Although Productions had begun as a

3

documentary film production company, by 2016 its primary business had become selling specialty long range rifles.  McCall Decl., ¶9.  As of July 2016 Productions had more than two  million dollars' worth of inventory.  *Id.*, ¶10.  Creditor was willing to guaranty the Loan and pledge collateral of his own because he knew that Wells Fargo was over-secured.  *Id.*, ¶12.

In late 2017 Productions was in default on the Loan.  McCall Decl., ¶14.  On February 1, 2018, Creditor purchased the Loan from Wells Fargo and acquired all of its rights thereunder. McCall Decl., ¶16.  That purchase led to a falling out between Creditor and the other members of Productions, with the other members purporting to expel Creditor and to cancel or otherwise convert Creditor's equity interest in Productions and Huskemaw Optics, LLC.  McCall Decl., ¶17.  In 2018, Creditor filed suit against Productions and Huskemaw, *John A. McCall, Jr. v. Best of the West Productions, LLC, et al.*, Case No. 29026 (5th Dist., Wyo. 2018)(the "State Court Lawsuit").  In the State Court Lawsuit, Creditor sought to collect on the Loan and also recover for the conversion of his equity interest in Productions and Huskemaw.  McCall Decl., ¶17.

Unbeknownst to Creditor, in 2020, as it became increasingly likely that Creditor would prevail in the State Court Lawsuit, the other members created Holdings, Arms and Ammo in a corporate restructuring for the purpose of  "increased liability protection".  *See* Dkt. No. 106, Exh. D.  Holdings was created on July 15, 2020 and Arms and Ammo

4

were created on September 28, 2020.  See *Dkt No. 106-1,* (Wyoming Secretary of State

filing information for Holdings, Arms and Ammo).  Specifically, Holdings, Arms and

Ammo were created to protect Productions' assets from the reach of its creditors,

particularly Creditor John A. McCall, Jr.. *See* Dkt 106-1, Exh D (Debtors' state court

interrogatory responses admitting that "… the corporate structure [was changed] to …

[among other things] … provide increased liability protection ….").

Creditor first discovered the corporate restructuring in late 2022.  McCall Decl.,

¶21.  At a hearing in the State Court Lawsuit in January 2023, an accountant witness

called by Productions testified that Productions' assets had been transferred for no

consideration to the other entities, Arms, Ammo and Huskemaw.  *See* Exhibit B to

Motion, Transcript of January 23, 2023 Hearing, Case No. 29026 (5th Dist., Wyo. 2018),

at 121:1-24.  In July 2023 Creditor obtained the balances sheets for the entities.   Those

documents indicated that Productions, which had been the owner of all of the rifle

inventory prior to the restructuring, had no inventory and negative net value.  *See* Dkt.

No. 143 (balance sheets filed under seal); McCall Decl., ¶11.  Prior to 2020, Productions

held all of the inventory.   *See* Exhibit B to Motion, Transcript of Show Cause Hearing,

*McCall v. Best of the West Productions, LLC*, Case No. 29026 (5th Dist. Wyo., Jan 20.

2023), at 115:20-25; 116:1-5(testimony of accountant that Productions originally

possessed all inventory).  After the new software system was implemented, the inventory

was apparently transferred to Arms, Ammo and Huskemaw.  *Id*., at 117:19-23 ("Q: So as we sit here today [January 2023], the only entities that have inventory assigned to them within this new software program is Huskemaw, Best of the West Arms and Best of the West Ammo? A: Correct . . .").  Holdings, as the name implies, is a holding company that owns the subsidiaries Productions, Huskemaw, Arms and Ammo but itself has had no inventory and does not appear to have been a direct transferee of Productions' assets. *See* Exhibit A to Motion, Transcript of Show Cause Hearing, *McCall v. Best of the West Productions, LLC*, Case No. 29026 (5tt hist Wyo.,  Jan 20. 2023), at 115:15-16(testimony of bookkeeper Laina Rajala that "Best of the West Holdings has no inventory").

None of the entities (Arms, Ammo or Huskemaw) paid Productions for any of the assets transferred to them from Productions.  *See* Exhibit A to Motion, Transcript of Show Cause Hearing, *McCall v. Best of the West Productions, LLC*, Case No. 29026 (5th Dist. Wyo., Jan 20. 2023), at 121:1-10.   Specifically, the company bookkeeper testified as follows:

> Q;    And when the assets were taken out of Best of the West Productions and assigned to these different entities as part of this restructure, did the other entities pay anything to Best of the West Productions for the assets?

6

A: There has been no cash transaction. We've recorded as needed. There are some

intercompany transactions that do happen.  It's really been just a split of the balance

sheet and P&L to them to the correct operational entity.

. . .

Q: . . . Prior to the implementation of the new software, all of the assets rested with

Best of the West Productions in its Quickbooks?

A: Correct.

*Id.*, at 121:1-10, 20-24.

By the time Productions filed its bankruptcy petition on April 22, 2024, however,

the value of Productions' assets were just $128,118.11, comprised of office furniture and

"intangible assets" (a television show), no inventory and less than $4,000 of cash.  *See* Dkt.

30, Case No. 24-20142 (listing assets with a total value of $128,118.11).  By contrast, as

of July 2023 Arms, Ammo and Huskemaw possessed millions of dollars' worth of

inventory.  *See* Dkt. 143.  The information provided about Arms stated that it went from

$0 in assets when it was formed in late September 2020 to having more than five million

dollars in "Assets" in less than three years. Ammo similarly went from $0 in assets in

September 2020 to more than $700,000 in "Assets" during the same time.

In November 2023, after more than five years of litigation, a jury awarded Dr.

McCall $3,555,201 in damages, interest, and penalties against Holdings, Huskemaw and

Productions.  McCall Decl., Exh. D (Judgment).  Ammo and Arms were not named as

defendants in the State Court Lawsuit nor have they filed bankruptcy.  McCall Decl.,

Exh. D.   After further proceedings, the court in the State Court Lawsuit (the "Trial

Court" entered an Amended Judgment reducing the amount awarded to Creditor McCall

and against each of the Debtors to $2,441,523.57.  McCall Decl., Exh. E ("Amended

Judgment); Creditor's Proof of Claim ("*Cl*") *No. 7-1, Pt. 3* (the "Amended Judgment"),

and thereafter awarded Dr. McCall an additional $650,000 in attorneys' fees and $15,000

in court costs against the Debtors. *Cl. 7-1, Pt. 6, p. 16*.

Because Creditor prevailed against Debtors both on his claim under the

secured Loan and his claim for conversion, Creditor is a secured creditor under that

portion of the judgment awarded under the Loan and an unsecured creditor with respect

to that portion of the judgment awarded under Creditor's claim for conversion.  *See*

McCall Decl., Exh. E.   The unsecured portion under the original Judgment was

$1,784,640 and $293,057.17 under the Amended Judgment. *See* Cl. 7-1.  Creditor has

filed a motion for relief from stay to pursue an appeal of the reduction in the judgment.

Dkt. No. 93.

Holdings is a 100 percent owner of Productions, Huskemaw, Arms and Ammo.

See Dkt. No. 77 (Holdings' Schedule A/B), at lines 15.1-15.5.  At the time of the

restructure, the same beneficial ownership in Productions was essentially converted into a

8

proportional ownership interest in Holdings, the sole parent of Arms and Ammo.

Accordingly, all the entities have always had the same ultimate beneficial owners and

officers.  McCall Decl., ¶28.

Despite the July 2023 balance sheets showing Arms and Ammo in possession of

several million dollars' worth of inventory, Holdings' schedules and proposed subchapter

V plan places no value on either Arms or Ammo.  *See* Dkt No. 77 (Holdings' Schedule

A/B); Dkt. No. 101 (Holdings' proposed subchapter V plan).   Likewise, although the

July 2023 balance sheets show Arms and Ammo owing millions of dollars to Holdings,

the schedules filed by Holdings do not show any notes receivable or any money owed to

Holdings by either Arms or Ammo.  Compare Dkt No. 77, line 71 (Holdings' Schedule

A/B) with Dkt No.  143 (balance sheets).

Creditor reasonably believes that, on or after September 28, 2020 (the date of

organization of Arms and Ammo), Productions transferred its valuable inventory to Arms

and/or Ammo.  Productions' inventory was transferred to Arms and/or Ammo for little or

no consideration.  *See* Exh. B, Transcript, at 121:10.  Creditor reasonably believes that

their formation was part of the Debtors' plans to remove assets from his reach. *See, Dk.*

*106-1, p. 10.*  In order to fully understand the details of how this was accomplished,

Creditor has filed multiple Motions for 2004 examination and served subpoenas on

Productions, Arms, Ammo and Huskemaw.  *See* Dkt. Nos. 105, 106 and 107.  Debtors

have resisted this discovery by filing a motion for reconsideration of the Rule 2004

Examination Orders, which motion is pending.  *See* Dkt. No. 136.

On July 15, 2024, Creditor requested Productions take action to set aside certain

fraudulent transfers that occurred sometime on or after September 28, 2020 when Arms

and Ammo were formed.  *See* Dkt. No. 140-2 ("Declaration of Clark Stith in Support of

Opposition to Debtors' Motion to Reconsider")(Stith Decl."), ¶3.  Debtors' counsel

promptly responded the next day that he would look into the matter and respond by July

19, 2024.  On July 26, 2024, having received no response, Creditor's counsel sent an

email to counsel for debtor again making the same request.  The same day, counsel for

debtors responded that "we have been diligently looking into this matter and it has proven

more difficult than we expected."  Stith Decl., Exh. C.  Productions has now declined to

do so.  In its Amened Plan filed August 8, 2024, Productions states "Production does not

intend to pursue any Avoidance Actions at this time."  *See* Dkt. No. 130, at 7.

## II

## JURISDICTION AND RELIEF REQUESTED

This is a core proceeding arising out of *In re Best of the West Productions, LLC*,

Case No.  24-20142, a chapter 11 case that was filed on April 22, 2024.  Jurisdiction in

this court is therefore appropriate under 11 U.S.C. §§157 and 1334.

11 U.S.C. §544(a) provides, in pertinent part:

10

**(a)**The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

> **(1)**
>
> a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> . . .

11 U.S.C. §544(a)(1).

Section 544(b) provides:

> **(1)** Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. §544(b)(1).

11

Section 544 confers upon the trustee, or in the context of chapter 11, the debtor in possession, the exclusive right to pursue fraudulent transfer claims. *In re Fox*, 305 B.R. 912 (10th Cir. BAP 2004).

An exception to this rule arises where a chapter 11 debtor in possession is requested to pursue fraudulent transfer claim on behalf of the estate and refuses to do so. The court then may confer derivative standing on a creditor to pursue such claims on behalf of the estate.   A creditor may have derivative standing where:

1) a demand has been made upon the statutorily authorized party to take action;

2) the demand is declined;

3) a colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court, and

4) the inaction is an abuse of discretion ("unjustified") in light of the debtor-in-possession's duties in a Chapter 11 case.

A creditor has met its burden to show standing to file an avoidance action if it has fulfilled the first three requirements and the trustee or debtor-in-possession declined to take action without stating a reason. The burden then shifts to the debtor-in-possession to establish, by a preponderance of the evidence, that its reason for not acting is justified.

12

*Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd.* (*In re The Gibson Group, Inc.*), 66 F.3d 1436 (6th Cir. 1995).

The Tenth Circuit has not ruled on derivative standing in chapter 11 cases. *In re Roman Catholic Church of the Archdiocese of Santa Fe*, 621 B.R. 502, 508 (Bankr. D.N.M. 2020). Lower courts in the Tenth Circuit, however, have recognized derivative standing for a creditor to pursue claims on behalf of the estate where the debtor in possession has refused to do so. See e.g., *In re Roman Catholic Church of the Archdiocese of Santa Fe*, 621 B.R. 502, 508 (Bankr. D.N.M. 2020); *See, e.g., In re Ellicott Springs Res., LLC*, 485 B.R. 626, 640 (Bankr. D. Colo. 2013) ("Several circuit level courts have found an implied but qualified right under certain circumstances for creditors, through derivative standing, to pursue ... claims that otherwise belong exclusively to the trustee") (internal quotations omitted); *In re Terra Bentley II, LLC*, 2011 Bankr. LEXIS 806, 2011 WL 808190, at *4 (Bankr. D. Kan. 2011) ("the Court sees no reason to believe the Tenth Circuit would disagree with the unanimous view of the Circuits that have decided the question," i.e., that derivative standing is permissible).

Each of the elements required for derivative standing are satisfied here and Creditor should be allowed to pursue fraudulent transfer claims on behalf of the estate.

A.  **The Estate's Fraudulent Transfer Claims Are Timely**.

Under 11 U.S.C. §section 544, a debtor in possession or trustee has the power to avoid a transfer "that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C.  §544(b). This includes, but is not limited to, state law fraudulent transfers. The trustee succeeds to the rights of an actual unsecured creditor that exists on the petition date, and is said to "step into the shoes" of that creditor.  *Sender v. Simon,* 84 F. 3d 1299, 1304 (10th Cir. 1996) (discussing application of 544(b)(1)); Collier on Bankruptcy, ¶544.06.

Creditor asserts an unsecured claim in the amount of $1,784,640 (or $293,057.17 under the Amended Judgment in the event his appeal fails on that issue.)  W.S. 34-14-206 provides:

§ 34-14-206. Transfers fraudulent as to present creditors.

 **(a)** A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

14

 **(b)** A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

W.S. 34-14-206.

W.S. 34-14-205 provides:

**(a)** A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

    **(i)** With actual intent to hinder, delay or defraud any creditor of the debtor; or

    **(ii)** Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

        **(A)** Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

        **(B)** Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

15

W.S. 34-14-205(a).

Creditor's discovery of the corporate restructuring did not occur until late 2022; Creditor's discovery of the apparent transfer of assets did not occur until Creditor obtained the relevant balance sheets in July 2023; and Judgment was not entered in Creditor's favor against Productions until December 2023.  The applicable statute of limitations (whether two years or four years, discussed *infra*), would have thus first begun to run in either December 2023, July 2023 or late 2022 at the earliest.  See *In re Momentum Development Inc., Pyramid Center, Inc. v. Weil*, BAP No. CC-22-1084-CFL (Bankr. App., 9th Cir. 2023), slip op. at .10 (holding bankruptcy trustee's assertion of fraudulent transfer claims timely under California uniform fraudulent transfer statute because "where an alleged fraudulent transfer occurs while an action seeking to establish the underlying liability is pending, and where a judgment establishing the liability later becomes final, we construe the four-year limitation period, *i.e.,* the language, 'four years after the transfer was made or the obligation was incurred,' to accommodate a tolling until the underlying liability becomes fixed by a final judgment").  If the discovery rule were utilized instead, then the statute of limitations would have begun to run in July 2023 when Creditor discovered the balance sheets showing the depletion of Productions' assets or at the earliest in late 2022 when McCall discovered the corporate restructuring. McCall Decl., ¶21; Dkt No. 143.

Even if there were no tolling of the statute of limitations, however, the fraudulent transfer claims are nonetheless timely because the applicable statute was four years when the transfers likely occurred.  Prior to July 1, 2021, the relevant statute of limitations for fraudulent transfers in Wyoming was four (4) years.  With the adoption of HB64 in 2021, the statute of limitations under Sections 205 and 206 was reduced to two years for most cases, and to just six months for situations not relevant here.  *See* 2021 Session Laws, Enrolled Act No. 40 (original House Bill 64).  Creditor believes that the discovery rule should apply to the applicable triggering of the statute of limitations.  *See, e.g., Wagner v. Pruett (In re Vaughan Co.),* 477 B.R. 206, 214-15 (Bankr. N.M. 2012) (citing *In re Dry Wall Supply, Inc.,* 111 B.R. 933 (D. Colo. 1990), as long as cause of action is viable on the petition date, trustee may bring cause of action under 544(b)(1) provided he or she complies with 11 U.S.C. section 546(a) [within two years after appointment]).   Even if there were no tolling, transfers occurring prior to July 1, 2021 would be subject to a four year statute, and transactions occurring thereafter would be subject to a two year statute of limitations.  As Arms and Ammo were first created on September 28, 2020, the claims are certainly timely for any transfer of assets from Productions to Arms or Ammo occurring prior to July 1, 2021.

17

**B.  <u>The Fraudulent Transfer Claims Are Colorable.</u>**

Creditor is not required to prove that it will ultimately prevail in order to satisfy

the colorable claim element.  "[A] claim is colorable when it has some legal and

factual support, considered in light of the reasonable beliefs of the [party] making the

claim. The question is whether a . . . reasonable plaintiff . . . could have concluded that

facts supporting the claim **might be established**, not whether such facts actually **had**

**been established**." *FTC v. Freecom Communications, Inc.,* 401 F. 3d 1192, 1201 (10th

Cir. 2005) (quoting *Schlaifer Nance & Co,* 194 F. 3d 323, 337 (2d Cir. 1999); *In re STN*

*Enterprises*, 779 F.2d 901, 905-06 (2d Cir. 1985) (court need not conduct a mini-trial to

determine whether "colorable" claim has been presented); *Official Comm. v. Hudson*

*United Bank (In re America's Hobby Ctr.)*, 223 B.R. 275, 288 (Bankr. S.D.N.Y. 1998)

(observing that standing should be denied only if the claim is "facially defective").

 In the present case, Creditor has colorable claims under both W.S. 34-14-205 and 34-14-

206.  Creditor's claim arose in 2018 prior to the alleged transfers that occurred on or after

September 28, 2020.  Productions went from a company with significant firearms inventory

sufficient to pledge as collateral for a $500,000 loan to a company with no inventory and

negative net equity.   Productions' balance sheet shows no notes receivable from Arms or

Ammo, while those companies acquired over $ 5million in inventory.  Creditor's claims are

colorable.

**C.** **Pursuing the Fraudulent Transfer Claims That Debtor Has Declined To Pursue Will Benefit The Estate.**

Creditor has asked Debtor Productions to pursue the fraudulent transfer claims and Debtor Productions has declined to do so.  *See* Stith Decl.,¶3; Dkt. No. 130 (Productions Amended Plan), at 7 ("Productions does not intend to pursue any Avoidance Actions at this time").  Given the conflict of interest faced by the Debtors' insiders, this refusal is not a surprise, but it is unjustified.  Because Creditor will bear the initial expense of pursuing the clams (and seek reimbursement from the estate only upon a net recovery), the cost benefit analysis weighs in favor of granting derivative standing.  *In re Dzierzawski*, 518 B.R. 415, 422-23 (Bankr. E.D. Mich. 2014)("granting derivative standing to Vulpina as requested cannot result in any net *loss* or net *cost* to the bankruptcy estate. Rather, such derivative standing can possibly result only in a net financial benefit to the bankruptcy estate, or at worst, no net financial effect, positive or negative. From the perspective of the bankruptcy estate, therefore, granting derivative standing to Vulpina will give the estate a no-risk chance of recovering additional money").

19

For the foregoing reasons, Creditor requests that the court enter an order giving Creditor John A. McCall, Jr. derivative standing to pursue fraudulent transfer claims on behalf of debtor Productions' estate.

## NOTICE OF OPPORTUNITY TO OBJECT

Pursuant to L.B.R. 2002-1(B)(5), you are hereby notified that if you desire to object to this motion, you must file with the bankruptcy court and serve on counsel for Creditor a written objection to the Motion on or before **September 26, 2024,** or the relief requested may be granted by the court.

DATED: September 9, 2024.


JOHN A. MCALL, JR.
Creditor


__/s/ Clark Stith_____
Clark Stith
505 Broadway
Rock Springs, WY 82901
clarkstith@wyolawyers.com
Phone: (307) 382-5565
Fax: (307) 382-5552
W.S.B. 6-3176
Attorney for Creditor John A. McCall, Jr.

<u>CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)</u>

I certify that, on September 9, 2024, I electronically filed the foregoing Creditor John A. McCall, Jr.'s Motion for Derivative Standing To Pursue Fraudulent Transfer Claims and Notice of Opportunity to Object with the United States Bankruptcy Court for the District of Wyoming by using the CM/ECF system and by United States mail, postage prepaid and addressed to those persons on the attached creditor mailing matrix.  I further certify that the parties of record in this case, as identified below, are registered CM/ECF users and will be served through the CM/ECF system:

Bradley T. Hunsicker
Markus Williams Young & Hunsicker, LLC
2120 Carey Avenue, Suite 101
Cheyenne, WY 82001

Joli A. Loftstedt
PO BOX 270561
Louisville, CO 80027

Daniel J. Morse
308 West 21st Street,
Room 203
Cheyenne, WY, 82001-3669

/s/Clark D. Stith
Clark D. Stith