Case 24-20138   Doc 570-12   Filed 02/11/26   Entered 02/11/26 15:00:13   Desc
Exhibit 11 - email from counsel for Stryk Group and Yellowstone   Page 1 of 2

EXHIBIT
11

# Clark Stith

| | |
|---|---|
| **From:** | Kilgore, Parker <pkilgore@joneswalker.com> |
| **Sent:** | Thursday, February 5, 2026 12:37 PM |
| **To:** | Clark Stith |
| **Cc:** | 'Bradley T. Hunsicker' (BHunsicker@markuswilliams.com); Kirk Kennedy |
| **Subject:** | RE: [EXTERNAL] Meet and confer |

Clark-

Myers receives a paycheck from a subsidiary of Yellowstone Natural Holdings, Hi-Country Snack Foods. The subpoena issued by McCall was specific to the Yellowstone Natural Holdings Company, and did not request documents or information from its subsidiaries. To the extent that Myers previously indicated he received a paycheck from Yellowstone Natural, he was referred generally to the company and its subsidiaries, including Hi-Country Snack Foods. I hope this helps to clear up any confusion you may have.

Additionally, Stryk Group timely objected to the subpoena requesting "Any and all documents constituting, evidencing or relating to how the proceeds of the payments by BOTW Holdings, LLC to Stryk Group USA, LLC have been used during the period April 19, 2024 through the present," on the grounds that such as request was overly broad, unduly burdensome, and irrelevant. Now, based on the correspondence below, McCall appears to seek "Stryk Group USA, LLC's bank statements..." Again, such a request is overly broad and unduly burdensome.

Additionally, in light of McCall's recent request for "bank statements" Stryk Group additionally objects on confidentiality grounds. I am aware that Judge Parker has issued a Protective Order in this matter, but McCall has already knowingly and intentionally violated the protective order. Specifically, McCall took information marked as "Confidential" and replicated that information in the RICO complaint that McCall filed in the Eastern District of Texas, naming Stryk Group USA as a defendant along with its principals Chase Myers and Jeff Edwards and various other defendants. Judge Parker's Protective Order was crystal clear:

> All Confidential Information provided in response to a discovery request or transcribed testimony shall be subject to the following restrictions: It shall be limited to the extent reasonably necessary and may **solely be used in connection with matters relating to this bankruptcy proceeding, including any contested matters or adversary proceedings** arising thereunder and any appeal(s) arising therefrom
>
> No copies of Confidential Information shall be made except by or on behalf of counsel in this bankruptcy proceeding and such copies shall be made and used **solely for purposes of this bankruptcy proceeding**.
>
> [Confidential Information] shall not be communicated or disclosed by any party's counsel or a party in any manner, either directly or indirectly, to anyone except for the following individuals: outside counsel of record for the Debtors, Non-Debtors and McCall **in this action**.

The Protective Order is explicit that information disclosed in the bankruptcy shall "solely be used in connection with matters relating to this bankruptcy proceeding" and "solely for purposes of this bankruptcy proceeding." Unfortunately, confidential information disclosed in the bankruptcy made its way into the publicly available RICO complaint filed by McCall in Texas. Additionally, that RICO complaint was signed by McCall's local counsel, Jack Carroll. Since Mr. Carroll is not enrolled in the bankruptcy matters, the confidential information should not have been shared with him as it violates the provisions of Judge Parker's protective order that provides such information "shall not be communicated or disclosed by any party's counsel or a party in any manner" except for outside counsel in the bankruptcy matter. I immediately brought this to both Mr. Carroll's and Mr. Kennedy's attention, and I provided Mr. Carroll with a copy of Judge Parker's Protective Order, which he was not aware existed. Mr. Carroll then, within a matter of days, informed me he was withdrawing as counsel for McCall. Mr. Kennedy was

1

undeterred and filed a motion in the bankruptcy matter to file the confidential bound book under seal in the RICO action. That motion was denied by Judge Parker, who ultimately entered a preliminary injunction prohibiting McCall from prosecuting that action.

Within the past three weeks, McCall—through Mr. Kennedy and McCall's third local counsel to date in Texas—amended the "Trademark Suit" against Best of the West Arms, LLC and Stryk Group to include claims that mirror certain claims in the RICO action. In doing so, McCall added himself as a plaintiff, in additional to the original plaintiff Stealth Vision. McCall also added multiple other individual defendants, all former employees of Stryk Group.

In his recent amended complaint, McCall, personally, asserts an "unjust enrichment" claim that once again appears to be a collateral attack on Judge Parker and the bankruptcy proceedings. The core allegations of McCall's unjust enrichment claim, is "[d]uring the bankruptcy cases—which have been pending now for almost two years without any confirmed plan in place—Defendants Edwards and Myers have been liquidating inventory that is secured by Dr. McCall's lien and have used the cash to pay themselves and other insiders." He continues to allege that "Defendants have received cash payments and legal and financial ownership of Defendant BOTW Arms while Dr. McCall has been effectively deprived of his multi-million-dollar judgment awarded to him by a Wyoming jury due to the unfair and inequitable conduct of Defendants Edwards and Myers." The unjust enrichment claim is rooted in postpetition payments approved by the Court and McCall's alleged "lien."

This amended complaint was filed after Judge Parker issued the Preliminary Injunction and admonished McCall regarding similar allegations made in the RICO complaint. As Judge Parker noted in the Preliminary Injunction, "To the extent Dr. McCall represents to the Texas District Court that administration of Debtors' estates to date has been wrongful, he does so in direct contravention of orders this court has already issued." Judge Parker also notes in the Preliminary Injunction that "[s]uggestions made in his pleadings in the Texas District Court that aspects of estate administration have been improper borders on unethical, as the court has expressly approved many of the transactions about which Dr. McCall complains." Additionally, consistent with Judge Parker's critique of the RICO action, McCall once again "asks the Texas District Court to award him and Stealth Vision—and not the bankruptcy estates, for the benefit of all creditors—damages against non-debtors for postpetition payments received from Debtors that were expressly authorized by this court's orders, and/or other relief for which he already seeks redress in this court under multiple sections of the Bankruptcy Code."

In sum, McCall knowingly violated the protective order, was enjoined from pursuing the RICO claims, was admonished about claims made in the RICO petition, then—despite the admonishment from Judge Parker—amended his "Trademark Suit" to include the claims and allegations that Judge Parker described as "borders on unethical." In light of this, you can understand Stryk Group's objection to producing its confidential bank statements to a bad actor that refuses to follow orders issued by Judge Parker and who is circumventing the intent of the Preliminary Injunction.

If you intend to file a motion to compel, please note these additional objections to McCall's informal modification of the subpoena to seek all of Stryk Group's "bank statements."

Regards,
Parker


**C. Parker Kilgore** | Partner
Jones Walker LLP
D: 225.248.2181
pkilgore@joneswalker.com

**From:** Clark Stith <clarkstith@wyolawyers.com>
**Sent:** Thursday, January 29, 2026 4:08 PM